581 A.2d 625

**Daniel VARGO, Appellant,**

v.

**Christina HUNT, Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 22, 1990.

Filed Oct. 16, 1990.

Raymond Radakovich, Pittsburgh, for appellant.

Louis J. Stack, Meadville, for appellee.

Before POPOVICH, JOHNSON and HESTER, JJ.

POPOVICH, Judge:

This case involves an appeal from an order granting the Defendant's (Christina Hunt's) motion for summary judgment. We affirm.

A determination of whether the grant or denial of a motion for summary judgment is to be upheld requires an appellate court to decide whether the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Overly v. Kass,* 382 Pa.Super. 108, 554 A.2d 970, 971 (1989); see also *Chiricos v. Forest Lake Council Boy Scouts of America,* 391 Pa.Super. 491, 571 A.2d 474, 475 (1990). In making such a finding, we must accept as true all properly pleaded facts, as well as all reasonable inferences which might be drawn therefrom. Furthermore, we shall not disturb the trial court's ruling unless there has been an error of law or a manifest abuse of discretion. *Overly v. Kass,* supra.

Viewed in such a light, the record discloses that a writ of summons was filed and followed by the entry of a rule and the presentment of a complaint in which the Plaintiff (Daniel Vargo) alleged that the Defendant had defamed him by accusing him, falsely, of "cheat[ing] on a[n] academic examination in violation of the Allegheny College Honor Code." Paragraph 4. "As a result of Defendant's false, scandalous, malicious and defamatory" report of her observations, a hearing was conducted before the Allegheny College Judicial Board. The recommendation of the Board was that the Plaintiff receive a failing grade in the course, be suspended from the College for one term, and, upon his return, be placed on probation for a period of one term.

In her Answer and New Matter, the Defendant contended that she merely reported what she "perceived to be an act

of dishonesty in academic work to the Honor Committee when she observed Plaintiff looking in the direction of a study sheet [situated at his feet] on the floor during [an accounting] examination." Paragraph 16. She averred that she acted accordingly in complying with the Honor Code at the College, as all students at the College were required to do. "Failure to report [such an observation would be considered] a breach of the Allegheny College Academic Honor Program and [would have] constitute[d] an infraction of the Honor Code." Paragraph 15. The Defendant went on to assert that all students matriculating into the College were cognizant of the Honor Code, and the Plaintiff, in fact, signed his examination, as all students were required to do, indicating that he was "[p]ledg[ing]" to adhere to the Honor Code in the completion of his examination. Paragraph 23.

The Plaintiff exercised his right, pursuant to the Allegheny College Judicial System handbook, to appeal the Board's decision to the President of Allegheny College. Once the ruling was upheld, a civil suit was instituted for defamation by the Plaintiff in the Court of Common Pleas of Crawford County.

After the submission of various pleadings by the parties, the court below granted the Defendant's motion for summary judgment. The court found that, as a matter of law, the Plaintiff[1] "*consented* to the administrative procedures and knew or should have known of the responsibility of students under the [Honor] Code; that is, if a student believed a fellow student to be in violation [of the Honor Code], the observing student had a duty to inform the Honor Committee." Lower Court Opinion at 4–5 (Emphasis in Original). Additionally, the statements of the Defendant were found by the court to be "conditionally privileged" in that disclosure of what she observed was necessary to preserve the integrity of the academic process through the Honor Code,

1. The lower court used "Defendant" as the pronoun preceding the quoted material. We find, given the sentence structure, the court meant to write "Plaintiff".

and such an interest far outweighed the possible risk of damage to the Plaintiff's reputation. Id. at 5. No abuse of the conditional privilege was found to have occurred. Thereafter, the Defendant's motion for summary judgment was granted, and this appeal was perfected to question the propriety of the order entered.

The first issue to be addressed reads:

Whether the lower court erred in determining that the Defendant's defamatory remarks were conditionally privileged[?]

We begin our assessment of the Plaintiff's complaint with the observation that:

" '[a]n occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know.' "

*Rankin v. Phillipe*, 206 Pa.Super. 27, 30, 211 A.2d 56, 58 (1965) (Citation omitted). Accord *Beckman v. Dunn*, 276 Pa.Super. 527, 419 A.2d 583, 587–588 (1980).

Furthermore, proper occasions giving rise to a conditional privilege exist when: (1) some interest of the person who publishes defamatory [2] matter is involved; (2) some interest of the person to whom the matter is published or some other third person is involved; or (3) a recognized interest of the public is involved. See *Keddie v. Pennsylvania State University*, 412 F.Supp. 1264 (M.D.Pa.1976).

**2.** A communication is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or deter third persons from associating or dealing with him, *Cosgrove Studio and Camera Shop, Inc. v. Pane*, 408 Pa. 314, 182 A.2d 751 (1962), and necessarily involves the idea of disgrace, *Vitteck v. Washington Broadcasting Co.*, 256 Pa.Super. 427, 389 A.2d 1197 (1987). Although not found by the lower court to be defamatory, the matter being a question of law to be determined initially by the court below, one can fairly and reasonably construe the suspension of the Plaintiff from Allegheny College for cheating, receiving a failing grade and being placed on probation after sitting out a semester as "involv[ing] the idea of disgrace" amounting to libelous behavior.

We find that a question of privilege was raised by the facts that were pleaded, and, clearly, a proper occasion resulting in a conditional privilege was present in this case. For example, under the Honor Code, the Defendant had an obligation to report her observations of the Plaintiff during the accounting test. Conversely, the Honor Code Committee and the College Judicial Board had a right to be made aware of the Plaintiff's conduct during the examination to effectuate the principles espoused in "The Academic Honor Program" at Allegheny College, i.e., integrity and honesty in academia. Principles which the Plaintiff became aware of upon his receipt, just as did all in-coming freshmen to Allegheny College, of the Honor Code handbook, which reads in pertinent part that:

THE ACADEMIC HONOR PROGRAM at Allegheny College is designed to promote individual responsibility and integrity in academic affairs and to develop an atmosphere conducive to serious independent scholarship. The Honor program operates under the following Honor Code:

## ARTICLE I

The Honor Program shall apply to all work submitted for academic credit or to meet non-credit requirements for graduation at Allegheny. This includes all work done in class (examinations, quizzes and laboratory work), all papers, and any other material so designated by the instructor. All students who have enrolled in the College will work under the Honor program. The College assumes that the integrity of each student and of the student body as a whole will be upheld. A primary responsibility of each student of the College is the maintenance of honesty in one's own academic work. In addition, it is the moral obligation of each student to help maintain the integrity of the entire college community.

## ARTICLE II

By virtue of matriculation in the College, each student acknowledges the following:

I hereby recognize and pledge to fulfill my responsibilities, as defined in the Honor Code, and to maintain the integrity of both myself and the College community as a whole.

## ARTICLE III

Section 1: If one student observes another committing what appears to be an act of dishonesty in academic work it is the observer's responsibility to take the appropriate action. Students are encouraged to inform either the instructor or a member of the Honor Committee. However, whatever action the observer takes must fulfill the obligation to uphold the integrity of the college community. Failure to do so is as injurious to the honor of the college community as is the observed act of dishonesty and constitutes an infraction of the Honor Code.

Section 2: The following practices are considered to be violations of the Honor Code in examinations, tests, quizzes, and in laboratory and computing exercises: any attempt to receive or to give unauthorized assistance from written, printed or recorded aids, from any person, or from another's work.

Also, on the first page of the examination for which the Plaintiff was charged with using "printed aids", he executed his signature to acknowledge that he was aware of the "pledge" not to act in a "dishonest" manner in performing "academic work".

Surely, as noted by the lower court, "the integrity of the academic process of the College" was an interest that impacted upon the students, faculty and administration alike, and this interest merited preservation through the "self-policing" eye of students in reporting "perceived" violations of the Honor Code. Accordingly, the College community had a "common interest" in continuing a policy of "honesty" in the classroom, lest its reputation for "integrity" and graduating students possessing academic excellence and honesty be undermined in the public and private sector. And the Defendant's report to the Honor Commit-

tee of what she "perceived" the Plaintiff doing while taking an examination was merely a fulfillment of her "obligation" under the same Honor Code the Plaintiff agreed to uphold upon admission to Allegheny College.

Publication could only have been excessive if it had been made to persons who did not have a common interest in the events that unfolded, and no such publication was made here. Only interested parties were made privy to the observations of the Defendant and the consequences flowing therefrom, i.e., the Honor Committee (to whom the initial observations by the Defendant were communicated), the College Judicial Board (made up of an equal number of students and faculty who heard the case and made recommendations as to disciplinary action to be taken), the Dean of Students (who advised the Plaintiff of the recommendations of the Board and his right to appeal the suspension) and the College President (who reviewed the Plaintiff's appeal and sustained the Board's recommendations).[3]

The evidence presented to the court below is supportive of labelling the Defendant's conduct as "conditionally privileged". As such, in the absence of the Plaintiff establishing an abuse of the conditional privilege, we hold that the court acted properly in granting the motion for summary judgment. See *Rankin*, supra.

Judgment affirmed.[4]

---

3. The students in the examination room with the Plaintiff and the Defendant appeared before the Board. Almost all were supportive of the Plaintiff's account that he did not engage in surreptitious activity to secure answers for the test. Nonetheless, from the recommendations made, it appears that the Plaintiff was not persuasive as to his innocence.

4. Inasmuch as we hold that sufficient evidence was presented to substantiate the court's "conditional privilege" finding, we need not delve into the question of whether the Plaintiff "consented" to be bound by the Honor Code and the procedures promulgated thereunder to resolve allegations of a violation thereof.

   Also, of necessity, we conclude that there existed no genuine issue of material fact which needed to be resolved. See Pa.R.Civ.P. 1035.