582 A.2d 1342

Steven L. DUNKLE, Administrator of the Estate of Senie Dunkle Eyer, A/K/A Senie Eyer, Deceased and Steve L. Dunkle, Administrator of the Estate of Senie Dunkle Eyer, Deceased, on Behalf of Byran Eugene Eyer and Todd Travis Eyer, Minors

v.

FOOD SERVICE EAST INC., et al.

v.

Bruce TINDAL, the Pennsylvania State University, et al., Keith A. Berfield, Rubin J. Echemendia and William Hylbert.

Appeal of FOOD SERVICE EAST, INC; Food Service East, Inc. T/D/B/A the Cannery Store; the Cannery Store; Dennis James Hull; Richard Paul Whitman and Anthony Robert Castellano.

Superior Court of Pennsylvania.

Argued Oct. 11, 1990.

Filed Dec. 3, 1990.

Paul M. Puskar, Pittsburgh, for appellant.

Henry A. Goodall, Jr., State College, for Tindal, appellee.

James M. Horne, State College, for Pa. State, appellee.

Jerome E. Ornsteen, Philadelphia, for Hylbert, appellee.

R. Bruce Morrison, Norristown, for Berfield, appellee.

Before POPOVICH, HUDOCK and MONTGOMERY, JJ.

POPOVICH, Judge.

This controversial appeal involves the strangulation death of Senie Eyer. What began as a simple action in negligence against the store where Eyer was attacked has now escalated into an attempt to hold the perpetrator's treating psy-

chologist, counselor and doctor liable in damages for failing to warn the victim of their patient's propensity towards violence. Our duty is to consider whether the trial court properly determined that the above additional defendants owed no legal duty to protect the plaintiffs' decedent from their patient's hostility.

We are cognizant of the extreme importance of this complex issue, as well as the public interest in its resolution. Indeed, whether a psychologist or other health professional owes a duty to one other than his patient, and, if so, under what circumstances, has been a question largely unexplored in our legal precedent. Nevertheless, the appeal before us is from the orders entered in the Court of Common of Pleas of Centre County granting summary judgment in favor of the additional defendants, and thus our function is limited to specific determinations.[1] Since we find that no evidence was presented to create a genuine issue of fact as to the claims asserted against the additional defendants in this case, we must affirm the orders of the trial court.

This Court recently reiterated the correct standard of review when considering an appeal from the grant of a motion for summary judgment. In *Vargo v. Hunt*, 398 Pa.Super. 600, 581 A.2d 625 (1990), we stated

A determination of whether the grant or denial of a motion for summary judgment is to be upheld requires an

---

1. The orders in question provide:
   AND NOW, this 18th day of January, 1990, it is ORDERED that the Motion for Summary Judgment of Additional Defendants The Pennsylvania State University, The Pennsylvania State University Department of Psychology, The Psychological Clinic, and Rubin J. Echemendia is GRANTED. Defendants' Complaint to Join Additional Defendants is DISMISSED as to the movant Additional Defendants. AND NOW, this 18th day of January, 1990, it is ordered that the Motion for Summary Judgment of Additional Defendant Keith A. Berfield is GRANTED. Defendants' Complaint to Join Additional Defendants is DISMISSED as to the movant Additional Defendant. AND NOW, this 18th day of January, 1990, it is ORDERED that the Motion for Summary Judgment of Additional Defendant William Hylbert, M.D. is GRANTED. Defendants' Complaint to Join Additional Defendants is DISMISSED as to the movant Additional Defendant.

appellate court to decide whether the pleadings, deposi-
tions, answers to interrogatories, admissions and affida-
vits show that there is no genuine issue as to any materi-
al fact, and that the moving party is entitled to judgment
as a matter of law. *Overly v. Kass,* 382 Pa.Super. 108,
554 A.2d 970, 971 (1989); see also *Chiricos v. Forest
Lake Council Boy Scouts of America,* [391] Pa.Super.
[491], 571 A.2d 474, 475 (1990). In making such a finding,
we must accept as true all properly pleaded facts, as well
as all reasonable inferences which might be drawn there-
from. Furthermore, we shall not disturb the trial court's
ruling unless there has been an error of law or a manifest
abuse of discretion. *Overly v. Kass,* supra.

*Id. See also Bobb v. Kraybill,* 354 Pa.Super. 361, 364, 511
A.2d 1379, 1380 (1986) ("[t]o determine the absence of a
genuine issue of material fact, we must view the evidence in
the light most favorable to the non-moving party and any
doubts must be resolved against the entry of judgment.
[....] Summary Judgment is appropriate only in those
cases which are clear and free from doubt."); Pa.R.C.P.
1035.

With these standards in mind, we will briefly set forth the
facts and procedural history of this case, as well as the
issue on appeal. On March 6, 1987, the plaintiff Steve
Dunkle, administrator of the estate of Senie Eyer, instituted
an action for damages against the original defendants (her-
einafter "the Cannery"). The plaintiffs [2] alleged that the
defendants were negligent in failing to maintain a safe
place for business and in failing to stop Bruce Tindal from
fatally choking Senie Eyer upon their premises. Eyer,
Tindal's live-in girlfriend, died one week after the attack.

Prior to this incident, Tindal had been receiving psychiat-
ric care from Dr. Hylbert. Hylbert had diagnosed Tindal as
having schizophreniform disorder. At that time, Tindal was
taking medication called Navane to treat his illness. In
December, 1983, Hylbert instructed Tindal to discontinue

---

**2.** Dunkle filed suit on behalf of the estate and Eyer's two minor
children.

regular use of the drug. After he stopped taking his medication, Tindal's behavior became "nasty" and "violent." *See* Appellants' brief, at 4; Appellee Hylbert's brief, at 6. As a result, Hylbert re-prescribed the Navane. As both the appellant (the Cannery) and the appellees acknowledge, "[t]here is nothing in the record to indicate that Tindal expressed any specific tendencies vis-a-vis Eyer." *Id.* In December, 1984, Hylbert discharged Tindal and discontinued his medication, instructing him to take Navane on an as-needed basis. Tindal was still under treatment by Keith A. Berfield, a counselor at The Pennsylvania State University.

In March, 1985, Tindal confessed to the Penn State police that he had been stealing property. The police contacted Berfield, who neither confirmed nor denied his association with Tindal. The following day, Tindal and Eyer went to the Cannery to shop. At that location, Tindal and Eyer entered the men's room and Tindal strangled Eyer, believing her to be a Russian agent.

In June, 1987, the original defendants filed a writ of summons joining the additional defendants. Thereafter, a complaint was filed against the additional defendants. Except for Hylbert and Tindal, the additional defendants filed preliminary objections, contending that the original defendants failed to state a claim upon which relief could be granted. The trial court dismissed the preliminary objections pending Tindal's deposition. The trial court stated that discovery should be effectuated before it would render a decision regarding the legal issues raised in the preceding pleadings. In particular, the trial court found that it was necessary to depose Tindal before it could determine whether Eyer was a "readily identifiable" victim of Tindal's attack. Trial court opinion, March 31, 1989. An amended complaint to join was filed subsequently. Answers were timely filed. Ultimately, discovery was completed.

In the final months of 1989, all of the additional defendants filed their respective motions for summary judgment. Specifically, the additional defendants alleged that they

owed no duty to the decedent and hence, could not be held liable for her ensuing death.[3] On January 18, 1990, the trial court granted the various motions and dismissed the original defendants' complaint to join. This appeal followed.

The Cannery raises one issue for our review: Did the additional defendants owe a duty to the plaintiffs' decedent? In its summary of the argument, the Cannery asserts the following:

> The trial Court erred in two respects. First, it held that a duty of a physician to a third-party, non-patient did not exist in this Commonwealth as set forth in *Tarasoff v. Regents of University of California*, 17 Cal.3d 425 [131 Cal.Rptr. 14], 551 P.2d 334 (1976) and adopted by this Court in *Coath v. Jones*, 277 Pa.Super. 479, 419 A.2d 1249 (1980). In addition, it made an error in deciding that the case in *DiMarco v. Lynch Homes—Chester County*, [384] Pa.Super. [463], 559 A.2d 530 (1989), was not dispositive of the issues raised by this case.

Appellants' brief, at 6. We have read the record in this case. In addition, we have extensively and thoroughly researched the issue raised by the Cannery. After careful consideration, we find that the trial court properly granted summary judgment in favor of the additional defendants.

The trial court correctly concluded that the additional defendants did not owe the plaintiffs' decedent any duty at law to protect her from Tindal's violent act. Although our research has failed to provide us with Pennsylvania caselaw that is directly on point, other jurisdictions have confronted analogous issues.

In *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 551 P.2d 334, 131 Cal.Rptr. 14 (1976), the California Supreme Court was faced with the question of whether a cause of action could exist for a psychologist's failure to warn a third party of his patient's dangerous

---

3. Tindal adopted the arguments set forth by the Cannery. *See* Appellee Tindal's brief, at 6. We note that Tindal was declared criminally insane by the trial court and is currently a patient at Farview State Hospital. *See* Trial court opinion, at 2.

propensities. The court concluded that in certain, very limited circumstances, the public's interest in safety must take precedence over the patient's interest in confidentiality and therefore, a psychologist may have a duty to protect identifiable, foreseeable victims from a patient's threats of violence. *Id.* at 439–40, 551 P.2d at 346, 131 Cal.Rptr. at 26. *See also id.* at 430–31, 551 P.2d at 340, 131 Cal.Rptr. at 20. Notably, in *Tarasoff,* the patient actually confided to his psychologist his intent to commit violent acts against a specified target, Tatiana Tarasoff, before he in fact killed her. The court stated that

> [a]lthough ..., under the common law, as a general rule, one person owed no duty to control the conduct of another ..., nor to warn those endangered by such conduct ..., the courts have carved out an exception to this rule in cases in which the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct....

*Id.* at 435, 551 P.2d at 343, 131 Cal.Rptr. at 23. *See also id.* at 436–38, 551 P.2d at 344–46, 131 Cal.Rptr. at 24–26 (accord). *See Thompson v. County of Alameda,* 27 Cal.3d 741, 749–56, 614 P.2d 728, 732–36, 167 Cal.Rptr. 70, 74–78 (1980) (accord). *See Sellers v. U.S.,* 870 F.2d 1098, 1102–03 (6th Cir.1989) (accord).

In the instant case, it is apparent that the additional defendants did not share with Eyer the type of "special relationship" contemplated by the California Supreme Court that would justify the imposition of a duty to warn. Additionally, the record very clearly indicates that Tindal communicated no resolve, nor manifested any inclination to harm Eyer prior to the date that he strangled her. We recognize the additional defendants' duty to treat Tindal;[4] however, under the factual scenario before us, we decline to extend the duty to protect a non-identifiable (in advance of her death) and arguably non-foreseeable third party victim. The fact that Tindal lived with Eyer did not automatically

4. We discuss this issue more completely, *infra.*

predispose her to abuse, nor may one infer that by virtue of their cohabitation, Eyer would be the most likely target of Tindal's possibly violent tendencies. The United States District Court, Middle District of Pennsylvania, previously rejected this argument in *Leedy v. Hartnett*, 510 F.Supp. 1125 (M.D.Pa.1981).

We echo the trial court's observation that

[t]he case now before us presents an issue similar to that in *Leedy* rather than in *Tarasoff.* In their Complaint to Join Additional Defendants, Original Defendants allege in relevant part: (1) Senie Eyer attended "one or more counseling sessions" with Bruce Tindal, provided by Additional Defendants; (2) Bruce Tindal "exhibited signs and symptoms of his deteriorating mental condition, indicating that he presented a danger to himself, and specifically to Senie Eyer;" (3) prior to March 16, 1985, Additional Defendants knew or should have known Bruce Tindal "would present and did present a danger to himself and to Senie Eyer;" (4) Additional Defendants were negligent in failing to warn Senie Eyer of, and protect her from, Bruce Tindal's dangerous propensities; and (5) Senie Eyer was the foreseeable victim of violent behaviour on the part of Bruce Tindal. [ . . . . ] Even taking all these allegations as true, for the purposes of summary judgment, Original Defendants have not alleged enough to hold the moving Additional Defendants in this case under *Leedy.*

Trial court opinion, at 4–5.

The issue in *Leedy v. Hartnett*, 510 F.Supp. 1125 (M.D. Pa.1981) was whether VA hospital personnel had a duty to warn the Leedys that Hartnett, a former patient, exhibited violent inclinations when he drank. The personnel, aware that Hartnett intended to stay with the Leedys when he left the hospital, failed to inform them of any potential danger. Subsequently, Hartnett attacked the Leedys.

In holding for the defendant, the *Leedy* court concluded that the patient did not pose a threat to the plaintiffs any greater than the danger he posed to the general public.

The court did not positively correlate frequent contact among individuals and their victims with the probability of violence as a result of those associations. Conversely, *Leedy* stands for the proposition that a victim may not be deemed "readily identifiable" merely because there exists a statistical possibility that increased contact will yield a higher likelihood of an attack. The court stated:

> Plaintiffs, recognizing that their case does not fall squarely within the confines of *Tarasoff*, seek to convince the Court that there exists a material issue of fact as to whether they were part of a readily identifiable group of people to whom Hartnett poses a special risk of danger. They seek to define this group as those who had frequent social contact with Hartnett. The Plaintiffs do not contend that Hartnett ever made any threat against them or that he was more likely to become violent toward people in whose presence he was comfortable. Indeed, the past acts of violence relied on by the Plaintiffs to show that Hartnett was dangerous do not fall into any pattern. At most, they demonstrate that Hartnett was prone to violent behavior and that that tendency was aggravated when he drank. There is no evidence from which it can be concluded that even when he drank Hartnett was more likely to become violent toward the people with whom he was drinking rather than others in the area. Plaintiffs appear to be arguing that since Hartnett had a tendency to commit violent acts, people with whom he had frequent contact would be more likely to be victims of such acts and for that reason a special duty was owed to any such people known to the hospital's personnel. Assuming that Pennsylvania would adopt a theory of liability similar to that in *Tarasoff*, the Court is of the view that Pennsylvania would not extend that theory to cover the facts of this case.
>
> In order for the rule of liability announced in *Tarasoff* to be kept within workable limits, those charged with the care of potentially dangerous people must be able to know to whom to give warnings. When, as in *Tarasoff*,

... a particular victim can be identified, there is good reason to impose upon psychiatrists or custodians a duty to warn the intended victim of the danger posed by the person under their care. On the facts of this case, however, Hartnett did not pose any danger to the Leedys different from the danger he posed to anyone with whom he might be in contact when he became violent. This is not a case in which it is alleged that the propensity to violence is increased by frequent contacts with the same people; rather, Plaintiffs' claim that they represent a readily identifiable group rests solely on a statistical probability that the more one saw Hartnett the more likely it is that one would be a victim of any violent outbreak by him. This is not the type of readily identifable victim or group of victims to which the California Supreme Court made reference in *Tarasoff*. ...

*Id.* at 1130.

This Commonwealth has never expressly adopted the California opinion in *Tarasoff.* However, even if we were to accept the *Tarasoff* holding as law in this jurisdiction, we would not find that decision determinative of the instant appeal. Conversely, we find that the *Tarasoff* rationale should be confined to the very limited circumstances presented in that case. We narrowly construe the California court's holding. Contrary to the appellants' position in the instant case, we will not interpret *Tarasoff* to mean that, in effect, strict liability should be imposed upon treating physicians for the wrongful acts of their patients where there is any reason to believe that a third party might be endangered by the patient's possible misconduct and the medical professional fails to inform the third party of same.[5] Such a rule would be unworkable and illogical.

5. In fact, the *Tarasoff* court itself recognized
   the difficulty that a therapist encounters in attempting to forecast whether a patient presents a serious danger of violence. Obviously we do not require that the therapist, in making that determination, render a perfect performance; the therapist need only exercise "that reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of [that professional specialty] under

More importantly, it would infringe upon other well-established doctrines in our jurisprudence.

■ We are in agreement with the various appellees' position that a psychologist (or psychiatrist) owes no duty to warn or otherwise protect a non-patient where the patient has not threatened to inflict harm on a particular individual. To hold otherwise would not only hinder the psychologist's relationship with the patient and frustrate the psychologist's ability to properly treat the patient, but additionally, it would infringe upon the psychologist-patient privilege. *See* 50 P.S. § 7101, *et seq.* *See also Farago v. Sacred Heart Hospital,* 522 Pa. 410, 562 A.2d 300 (1989) (discusses the Mental Health Procedures Act). *See* 42 Pa.C.S.A. § 5944—Confidential communications to psychiatrists or licensed psychologists. *See Commonwealth ex. rel. Platt v. Platt,* 266 Pa.Super. 276, 404 A.2d 410 (1978); *see Commonwealth v. Lloyd,* 523 Pa. 427, 567 A.2d 1357 (1989); *Commonwealth v. Dunkle,* 385 Pa.Super. 317, 561 A.2d 5 (1989), allocatur granted 524 Pa. 625, 574 A.2d 67 (1990) (discusses the public policies underlying the psychologist-patient privilege); *Commonwealth v. Kyle,* 367 Pa.Super. 484, 533 A.2d 120 (1987) discussing *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). *See Moses v. McWilliams,* 379 Pa.Super. 150, 549 A.2d 950 (1988) (en banc).

Moreover, as the *Tarasoff* court well-noted:

We realize that the open and confidential character of psychotherapeutic dialogue encourages patients to express threats of violence, few of which are ever executed. Certainly a therapist should not be encouraged routinely to reveal such threats; such disclosures could seriously disrupt the patient's relationship with his therapist and with the persons threatened. To the contrary, the thera-

similar circumstances." Within the broad range of reasonable practice and treatment in which professional opinion and judgment may differ, the therapist is free to exercise his or her own best judgment without liability; proof, aided by hindsight, that he or she judged wrongly is insufficient to establish negligence.
*Id.* at 438, 551 P.2d at 345, 131 Cal.Rptr. at 25.

pist's obligations to his patient require that he not disclose a confidence unless such disclosure is necessary to avert danger to others, and even then that he do so discreetly, and in a fashion that would preserve the privacy of his patient to the fullest extent compatible with the prevention of the threatened danger.

*Id.* at 441, 551 P.2d at 347, 131 Cal.Rptr. at 27.

We find no common law rule that imposes a duty on a psychologist or psychiatrist to warn a non-patient of a patient's dangerous propensities. In Pennsylvania, nor is there a statutory duty to protect a non-patient from similar potential harm. In the absence of legislative directives or reforms that specifically address this problematic issue, we decline to impose such a stringent legal duty on health care professionals under the facts of this case.

Finally, we agree with the trial court that this Court's decision in *DiMarco v. Lynch Homes—Chester County*, 384 Pa.Super. 463, 559 A.2d 530 (1989) is inapposite to the instant appeal. In *DiMarco*, the plaintiff/appellant (Joseph DiMarco) sued the defendants/appellees (physicians) for, *inter alia*, negligently advising Janet Viscichini, DiMarco's sexual partner, that she could safely resume sexual activities six weeks after she was exposed to hepatitis. Three months after the fact, Viscichini was diagnosed as having hepatitis. Six months after the fact, DiMarco was informed that he too had contracted the disease. The trial court originally dismissed the complaint, but this Court reversed, stating that the physicians might be liable to DiMarco if he could prove that he knew of the doctors' advice to Viscichini, detrimentally relied upon that advice, and suffered resulting harm. *DiMarco*, 384 Pa.Super. at 473–74, 559 A.2d at 535.

The original defendants in the instant case cite *DiMarco* for the notion that foreseeability is immaterial; a third party victim does not have to be "readily identifiable" for a patient's treating physician to be liable to the third party who is injured as a result of the physician's wrongful diagnosis to the patient. However, the *DiMarco* case is

clearly distinguishable on its facts. In addition, this Court was clear in its directive that *DiMarco* be confined to the circumstances of that case. We stated:

> Our decision is limited to the facts of the case presently before us.... We do not hold that [the woman's] physicians had a duty to control her conduct, but only that they had a duty to act reasonably in advising her regarding her ability to transmit her communicable disease. This case is one which involves medical advice, given in the context of a physician-patient relationship, concerning precautions to prevent the spread of a communicable disease by the patient. Importantly, in the case at bar, the third party to the physician-patient relationship claims to have been aware of the medical advice concerning the transmittal of the disease, and to have relied and acted upon this medical advice in interacting with the patient.... Under these circumstances, we are willing to find that the physicians owed a duty of reasonable care to the non-patient.

*Id.,* 384 Pa.Superior Ct. at 474 n. 3, 559 A.2d at 535 n. 3. *See also Sellers v. U.S.,* 870 F.2d 1098, 1103 (6th Cir.1989) (distinguishes a physician's duty, as opposed to a psychiatrist's duty, to the public).

As the trial court found in the instant case, "[i]t is nowhere alleged [that] Senie Eyer relied and acted upon advice given by [the] additional defendants to their patient, Bruce Tindal, nor is it alleged [that] she suffered detrimental harm as a result of reliance upon erroneous advice from physician to patient." Trial court opinion, at 7–8. We agree with the trial court that the *DiMarco* holding should not be extended to encompass "the completely distinct factual circumstances of the case at bar." *Id.*

Here, there was no dispute as to any material facts. *See* Appellants' reply brief, at 3 (states that "[the appellees' argument] ignores the fact that there was no dispute concerning the truly material facts of this case.").[6] Moreover,

---

**6.** The Cannery argues that Tindal's mental history, his relationship with Eyer and his deteriorating mental condition (and the additional

no evidence was offered to create any genuine issues of fact regarding the claims against the additional defendants.[7] Clearly, the additional defendants owed no duty to the plaintiffs' decedent. Thus, summary judgment was properly entered as a matter of law.

Orders affirmed.

defendants' knowledge thereof) were all germane to the issue of whether the additional defendants had a duty to protect Eyer. The Cannery alleges that "all of these undisputed facts, when taken in the context of the existing state of the law in this Commonwealth, are material to the resolution of whether a duty existed." Appellants' reply brief, at 3.

7. The appellants concede that Tindal never threatened nor expressed an intent to harm Eyer. Moreover, the evidence does not suggest that she was a specified or readily identifiable victim.