## Phillips v. Community Mental Health and Counseling Center

*Neil R. Rosen,* for plaintiff.

*Peter J. Taylor* and *Robert A. Weinheimer,* for defendant Community Mental Health and Counseling Center.

*Edward D. Klym,* for defendant Dr. John E. Blank.

*Francis Garger,* for defendant Dr. Elliot T. Shinn.

*James R. Miller,* for defendant Dr. Vincent Ciambotti.

*Kenneth C. Vasil,* for defendant James Rapple Jr.

FORNELLI, *J.,* May 3, 1991—This is a personal injury negligence action in which the victim of a shooting incident seeks damages from the mental health care facility and the physician's and psychiatrists who had previously treated her assailant. Presently before the court are these defendants' motions for judgment on the pleadings.[1] For the reasons set forth below, these motions will be denied.

On June 3, 1987, plaintiff was assaulted and shot by Stephen A. Rendick.[2] Previously, Rendick had

---

1. Plaintiff also seeks recovery of her damages from defendant James Rapple Jr., individually and t/d/b/a Shooter's Supplies, the seller of the firearm used in the assault. Rapple has not moved for judgment on the pleadings.

2. For this action, Rendick was subsequently convicted of aggravated assault and attempted homicide. See *Commonwealth v. Rendick,* 315 Criminal 1987 (C.P. Mercer County). For other actions on the same day, Rendick was also convicted of aggravated assault and attempted homicide as well as

been treated for emotional and psychological disorders by defendant Community Mental Health and Counseling Center and defendant doctors: Blank, Ciambotti and Shinn. Plaintiff alleges that Community and the doctors, both individually and as agents or employees of Community, were negligent in their diagnosis and treatment of Rendick's psychological disorders and are thereby liable to plaintiff for her damages.

By their motions for judgment on the pleadings, defendant mental health care providers assert that plaintiff's amended complaint[3] fails to establish any basis for imposing on them a duty of care owed to plaintiff. These defendants argue that the pleadings fail to indicate that plaintiff was a readily identifiable victim of Rendick's violent propensities. To the contrary, they argue that the pleadings indicate plaintiff was a random victim of irrational violence. Relying on *Dunkle v. Food Service East Inc.,* 400 Pa. Super. 58, 582 A.2d 1342 (1990), these defendants further argue that, under current Pennsylvania law, mental health care providers have no duty to warn or otherwise protect non-readily identifiable third parties from harm threatened by the patients of the care providers.

Plaintiff does not argue that she was a readily identifiable potential victim of violent acts likely to be committed by Rendick. However, plaintiff does allege that, given Rendick's violent propensities, his

first-degree murder. See *Commonwealth v. Rendick,* 314 Criminal 1987 and 317 Criminal 1987 (C.P. Mercer County).

3. Plaintiff has twice previously amended her complaint in response to defendants' preliminary objections. See *Phillips v. Community Mental Health and Counseling Center,* 25 Mercer L.J. 82 (1990); *Phillips v. Community Mental Health and Counseling Center,* No. 4551 C.D. 1989, slip op. (C.P. Mercer County July 31, 1990).

potential for causing harm to the general public and plaintiff in particular was foreseeable to defendant mental health care providers. Relying on *DiMarco v. Lynch Homes—Chester County Inc.*, 525 Pa. 558, 583 A.2d 422 (1990), plaintiff contends that these defendants had a duty to protect third parties belonging to the class of people foreseeably threatened by Rendick.

The factual situation before the *Dunkle* court involved a mental health patient who had strangled his live-in girlfriend. The Superior Court considered, inter alia, whether summary judgment had been properly granted the killer's mental health care providers on the basis that they had no duty to protect non-readily identifiable third parties from harm by their potentially violent patient. *Dunkle, supra.* Failing to find Pennsylvania case law directly on point, the Superior Court reviewed decisions of other jurisdictions beginning with the leading case on the issue: *Tarasoff v. Regents of University of California*, 17 Cal. 3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 (1976).

*Tarasoff* presented a situation in which a mental health patient told his psychologist of his intention to kill a specifically identified person. The psychologist kept his patient's confidence, who subsequently followed through with his homicidal intention. In finding a cause of action for the psychologist's failure to warn his patient's intended victim the *Tarasoff* court concluded that "a psychologist may have a duty to protect identifiable, foreseeable victims from a patient's threats of violence." *Dunkle,* citing *Tarasoff,* 17 Cal. 3d at 439-40, 551 P.2d at 346, 131 Cal. Rptr. at 26.

The *Dunkle* court noted that, to date, Pennsylvania "has never expressly adopted the California

opinion in *Tarasoff.*" *Id.* Moreover, the *Dunkle* court found the matter before it for consideration factually distinguishable from *Tarasoff*. In *Dunkle,* the mental health care providers shared no "special relationship" with the victim and their patient had communicated to them no intent or inclination to harm his girlfriend prior to strangling her. *Id.* The *Dunkle* court adopted the reasoning of the district court in *Leedy v. Hartnett,* 510 F.Supp. 1125 (M.D. Pa. 1981), that "a victim may not be deemed 'readily identifiable' merely because there exists a statistical possibility that increased contact will yield a higher likelihood of an attack." *Dunkle, supra.* Thus, the *Dunkle* court refused to infer an automatic predisposition of a mental health care patient to harm his girlfriend merely on the basis of their cohabitation.

Summarizing its analysis, the Superior Court in *Dunkle* stated:

"[W]e will not interpret *Tarasoff* to mean that, in effect, strict liability should be imposed upon treating physicians for the wrongful acts of their patients where there is any reason to believe that a third party might be endangered by the patient's possible misconduct and the medical professional fails to inform the third party of same. Such a rule would be unworkable and illogical. More importantly, it would infringe upon other well-established doctrines in our jurisprudence.

"We are in agreement with the various appellees' position that a psychologist (or psychiatrist) owes no duty to warn or otherwise protect a non-patient where the patient has not threatened to inflict harm on a particular individual. To hold otherwise would not only hinder the psychologist's relationship with the patient and frustrate the psychologist's ability to

properly treat the patient, but additionally, it would infringe upon the psychologist-patient privilege. . .

"We find no common-law rule that imposes a duty on a psychologist or psychiatrist to warn a non-patient of a patient's dangerous propensities. In Pennsylvania, nor is there a statutory duty to protect a non-patient from similar potential harm. In the absence of legislative directives or reforms that specifically address this problematic issue, we decline to impose such a stringent legal duty on health care professionals under the facts of this case." (footnote omitted)

In *DiMarco, supra,* the Pennsylvania Supreme Court considered whether a physician owes a duty of care to third parties who contract a communicable disease as a result of improper advice given by the physician to the patient. The specific facts in *DiMarco* involved a blood technician who had been exposed to hepatitis B and was advised by her physicians that if she did not develop symptoms for six weeks, she could conclude that she had not been infected. Although not advised to refrain from sexual activity, the woman nevertheless abstained. Having developed no symptoms, after eight weeks the woman resumed sexual activity with her boyfriend. Both were subsequently diagnosed as having hepatitis B, and the boyfriend sued the doctors for failing to warn the girlfriend that the disease could be sexually transmitted for six months after exposure. *Id.*

In *DiMarco,* the Supreme Court upheld the Superior Court's decision, which reversed the decision of the trial court sustaining a demurrer and dismissing the complaint with prejudice. The Superior Court had based its decision on section 342A(c) of the Restatement (Second) of Torts, which provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for the physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if. . .

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." *DiMarco, quoting* Restatement (Second) of Torts §324A.

Affirming the Superior Court's reliance on section 324A(c), the Supreme Court stated:

"When a physician treats a patient who has been exposed to or who has contracted a communicable and/or contagious disease, it is imperative that the physician give his or her patient the proper advice about preventing the spread of the disease. . .

"Such precautions are taken, not to protect the health of the patient, whose well-being has already been compromised, rather *such precautions are taken to safeguard the health of others*. Thus, the duty of a physician in such circumstances extends to those 'within the foreseeable orbit of risk of harm.' *Doyle v. South Pittsburgh Water Co.*, 414 Pa. 199, 207, 199 A.2d 875, 878 (1964). If a third person is in that class of persons whose health is likely to be threatened by the patient, and if erroneous advice is given to that patient to the ultimate detriment of the third person, the third person has a cause of action against the physician, because the physician should recognize that the services rendered to the patient are necessary for the protection of the third person." (emphasis in original; footnote omitted)

Thus, within the context of the complaint before it, the Supreme Court in *DiMarco* held "that the

class of persons whose health is likely to be threatened by the patient includes *anyone* who is physically intimate with the patient." (emphasis in original)

*DiMarco,* however, is distinguishable from the instant case on several grounds. First, plaintiff here makes no allegation that the harm she suffered resulted from reliance upon the actions of defendant mental health care providers. Second, apart from her status as a member of the general public, plaintiff alleges no basis for including her in any class of persons likely to be harmed by Rendick. Third, plaintiff alleges no basis for concluding that Rendick relied on defendant mental health care providers to protect plaintiff (or anyone else) from harm by plaintiff. Fourth, the Supreme Court's analysis was made in the context of a sexually transmitted disease, a harm far more identifiable, predictable and foreseeable to specific persons than generalized violent propensities of a mental health patient. Fifth, both the Superior Court and the Supreme Court in *DiMarco* relied on duties specifically imposed by legislative and regulatory action to control the spread of communicable disease. *Id.*

The instant case bears significant similarity to *Dunkle* in that both involve the question of whether non-readily identifiable third parties are owed a duty of care by the providers of mental health care to patients with violent propensities. The Superior Court in *Dunkle* also distinguished *DiMarco* on its facts. *Dunkle, supra.* Moreover, the Superior Court's decision in *Dunkle* results in part upon the Supreme Court's discussion of the Mental Health Procedures Act of 1976, 50 P.S. §§7101-7503, in *Farago v. Sacred Heart Hospital,* 522 Pa. 410, 562 A.2d 300 (1989). In *Farago,* the Supreme Court

stated: "One of the purposes of the Mental Health Procedures Act is to provide limited protection from civil and criminal liability to mental health personnel and their employers in rendering treatment in this unscientific and inexact field." *Farago,* 522 Pa. at 417, 562 A.2d at 304.

Thus, *Dunkle* and the instant case are also analogous in policy considerations, which are distinct from those in *DiMarco. Dunkle* and the instant case are concerned with preventing harm to non-readily identifiable victims of the violent propensities of patients of care providers in the field of mental health, an "unscientific and inexact field." *DiMarco* rested on a statutory and regulatory framework designed to prevent the spread of communicable diseases, a well-known and predictable risk of harm, to foreseeable third parties.

Since they are distinguishable both factually and legally, it cannot be assumed, as plaintiff contends, that the precedential value of *Dunkle* was diminished or extinguished by the decision of the Supreme Court in *DiMarco.* Moreover, the timing of the two decisions indicates that the Superior Court did not believe the Supreme Court's decision in *DiMarco* was controlling on the facts of *Dunkle.* This court cannot assume that the Superior Court in *Dunkle* was either unaware of the Supreme Court's decision in *DiMarco* or, even if it was unaware, would have decided *Dunkle* differently in light of the Supreme Court's decision in *DiMarco.*[4]

However, despite the greater apparent applicability of *Dunkle* to the instant case as indicated in the foregoing analysis, on the procedural posture in

---

4. The Pennsylvania Supreme Court decided *DiMarco* on November 29, 1990. Four days later, on December 3, 1990, the Superior Court's decision in *Dunkle* was filed.

which this matter is now presented, this court need not, and does not, determine whether *DiMarco* or *Dunkle* is controlling.

The Pennsylvania Rules of Civil Procedure provide: "After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). "A Rule 1034 motion for judgment on the pleadings can be used as a motion to test whether such a cause of action as pleaded exists at law, and in that way 'is in the nature of a demurrer.' " *Bensalem Township School District v. Commonwealth,* 518 Pa. 581, 586, 544 A.2d 1318, 1321 (1988), quoting *Bata v. Central Pennsylvania National Bank of Philadelphia,* 423 Pa. 373, 378, 224 A.2d 174, 178 (1966). " 'It [the motion] is limited to the pleadings themselves and no factual material outside the pleadings may be considered.' " *Id.* at 587-87, 544 A.2d at 1321, quoting Goodrich Amram 2d §1035:1 at 423.

As equivalent to a demurrer, a motion for judgment on the pleadings "admits every well-pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom, but not conclusions of law." *Mull v. Kerstetter,* 373 Pa. Super. 228, 229, 540 A.2d 951 (1988), quoting *Gekas v. Shapp,* 469 Pa. 1, 5-6, 364 A.2d 691, 693 (1976) (standards for sustaining preliminary objections in the nature of a demurrer). Further, " 'it is essential that the plaintiff's complaint indicate on its face that his claim cannot be sustained, and the law will not permit recovery.' " *Id.* Thus, a motion for judgment on the pleadings may be granted only where the law will not permit recovery on the face of the pleadings.

In light of these standards, defendants' motions for judgment on the pleadings must be denied. Notwithstanding the arguments, plaintiff has alleged the negligence of defendant mental health care providers in failing to ascertain the threat posed by Rendick's dangerous propensities to the public and "to the plaintiff in particular," and in failing to control and treat Rendick accordingly. (Plaintiff's second amended complaint, paragraphs 15 and 29.)

It is not for this court, in considering defendants' motions for judgment on the pleadings, to speculate whether and to what extent plaintiff was an identifiable victim of Rendick's dangerous propensities. Since plaintiff has alleged it, however unlikely, plaintiff has a legal right under the Rules of Civil Procedure to an opportunity to establish a factual basis to support it. Once discovery is completed, this issue will no doubt be again presented on a motion for summary judgment. At that time plaintiff's identifiability as a potential victim of Rendick's alleged dangerous propensities as well as the applicability of *Dunkle* and *DiMarco* can be properly addressed.

Hence, this

## ORDER

And now, May 3, 1991, defendants' motions for judgment on the pleadings are denied.