**[J-88-2019] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| LAURA L. MAAS, ADMINISTRATRIX OF THE ESTATE OF LISA CHRISTINE MAAS, DECEASED, | : | No. 7 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered June 29, |
| Appellee | : | 2018 at No. 185 WDA 2017, |
| | : | affirming the Order of the Court of |
| | : | Common Pleas of Allegheny County |
| v. | : | entered November 9, 2016 at No. |
| | : | GD-09-18900. |
| | : | |
| UPMC PRESBYTERIAN SHADYSIDE D/B/A WESTERN PSYCHIATRIC INSTITUTE AND CLINIC; WESTERN PSYCHIATRIC INSTITUTE & CLINIC; MICHELLE BARWELL, M.D.; AND WESTERN PSYCHIATRIC INSTITUTE & CLINIC ADULT COMMUNITY TREATMENT TEAM, | : : : : : : : : | |
| | : | |
| Appellants | : | ARGUED: October 16, 2019 |

**DISSENTING OPINION**

**JUSTICE BAER**                                    **DECIDED: JULY 21, 2020**

The Majority today holds that because Terrance Andrews expressed to his mental health care providers that he had recurring homicidal ideations towards a "neighbor," those mental health professionals had a legal duty to warn the approximately eighty tenants in Andrews' urban apartment building that Andrews posed an imminent threat of serious bodily injury to each of them. I respectfully dissent, as I view the Majority's holding as a significant and unwarranted departure from this Court's decision in *Emerich v. Philadelphia Center for Human Development, Inc.*, 720 A.2d 1032 (Pa. 1998), which set

forth the limited circumstances where a mental health care provider has a duty to warn a third party of a danger posed by a mental health patient.

I agree with the Majority that a duty to warn is not limited only to named targets of violence, and may encompass a readily identifiable individual or group. One's "neighbor" in an urban setting, however, is not readily identifiable, as it may encompass tenants on either side of one's apartment; tenants residing on the same floor; those living on other floors in the same building; residents inhabiting apartments in a building adjacent to the patient's residence; and those living on the same block or within the same community, and so on, without a discernable limited criteria.

To impose a legal obligation on mental health professionals to warn a large, amorphous group of potential targets is unworkable, as mental health professionals will be unable to ascertain who is entitled to a warning.[1] Further complicating the matter is that it is unclear when the mental health professional's duty shifts from treating the mentally ill patient to protecting the safety of the patient's "neighborhood." Finally, requiring the dissemination of a warning to such a broad segment of the public will adversely affect the privacy rights of patients receiving mental health treatment in this Commonwealth. Accordingly, while the instant case is most tragic, I believe our jurisprudence requires reversal of the Superior Court's judgment, which affirmed the trial court's denial of the mental health professionals' motion for summary judgment.

It is well-settled that the general rule under common law is that there is no duty to control the conduct of a third party to protect another from harm. *Emerich*, 720 A.2d at 1036. *Emerich* recognized a judicial exception to that rule "where a defendant stands in

---

[1] The lower courts deemed the readily identifiable group as the fourth floor tenants of Hampshire Hall, while the Majority concludes that all tenants of the building were members of the readily identifiable group to which a duty to warn was owed. These disparate interpretations of the term "neighbor" suggest that the term is not, in fact, readily identifiable.

some special relationship with either the person whose conduct needs to be controlled or in a relationship with the intended victim of the conduct, which gives to the intended victim a right to protection." *Id.* (citing Restatement (Second) of Torts § 315 (1965)). Based on the California Supreme Court's landmark decision in *Tarasoff v. Regents of University of California*, 551 P.2d 334 (Ca. 1976), the *Emerich* Court concluded that the special relationship between a patient and a mental health professional may, in certain circumstances, give rise to an affirmative duty to warn a third party of potential harm by his patient.[2] *Emerich*, 720 A.2d at 1037.

Notably, in defining the scope of the duty to warn, *Emerich* acknowledged "the conundrum a mental health care professional faces regarding the competing concerns of productive therapy, confidentiality and other aspects of the patient's well[-]being, as well as an interest in public safety." *Id.* at 1040. In light of these concerns and because the duty recognized constitutes an exception to the general rule that there is no duty to control the conduct of a third party, the *Emerich* Court emphasized that "the circumstances in which a duty to warn a third party arise are extremely limited." *Id.*

The *Emerich* Court examined the scope of the duty to warn and found "strong reasons" for limiting a mental health professional's duty to warn to a "specifically identified or readily identifiable third party." *Id.* In support of that limitation, the Court opined that the nature of therapy encourages patients to profess threats of violence, few of which the

---

[2] In *Tarasoff*, a mental health patient informed his therapist that he was going to kill a girl, who was readily identifiable as Tatiana Tarasoff. After the patient fulfilled his threat and killed Tarasoff, her parents filed an action against the therapist, alleging, *inter alia*, that he had a legal duty to warn Tarasoff of the patient's threat against her. Recognizing that a person generally owes no duty to control the conduct of another, the California Supreme Court carved an exception to that general rule. Specifically, the court held that "[w]hen a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger." *Tarasoff*, 551 P.2d at 340.

patients act upon, and that public disclosure of every generalized threat would vitiate the therapist's efforts to build a trusting relationship with the patient. *Id.* at 1040-41. *Emerich* also acknowledged the importance of the feasibility of issuing a warning, finding that "as a practical matter, a mental health care professional would have great difficulty in warning the public at large of a threat against an unidentified person." *Id.* at 1041. These very concerns come into play here by the Majority's unwarranted extension of the *Emerich* decision to a mental health patient's threat of violence towards a generally described segment of the public, as opposed to a readily identifiable individual or group, and animate the unsoundness of the Majority's position.

Rejecting the broad approach of imposing upon mental health professionals a duty to warn "all foreseeable victims," *Emerich* cabined the duty to warn to apply only to readily identifiable victims. *Id.* at 1041. The *Emerich* Court also cited the Supreme Court of California's decision in *Thompson v. Alameda*, 614 P.2d 728 (Cal. 1976), issued subsequent to *Tarasoff*. In *Thompson*, the California Supreme Court narrowed the duty to warn established in *Tarasoff* and elaborated on the import of a "readily identifiable" victim. *See* Maj. Op. at 19 (acknowledging that the *Emerich* Court "offered parenthetically that *Thompson* subsequently 'limited' the holding in *Tarasoff* to 'identifiable victims'").

In *Thompson*, a juvenile offender housed in a county institution had dangerous and violent propensities towards young children. Prior to his release, the offender told county officials that if released into the community he would take the life of a "young child residing in the neighborhood." *Thompson*, 614 P.2d at 730. The offender provided no further details about his intended victim. Within twenty-four hours of his release, the offender tragically murdered a young child in the garage of his mother's home. *Id.* The parents of the victim sued the county, alleging that it was negligent in failing to warn parents of young children within the immediate vicinity of the offender's residence that the offender had

violent tendencies towards children. *Id.* The trial court granted the county's demurrer for failure to state a cause of action.

The Supreme Court of California in *Thompson* affirmed, holding that the county did not owe a duty to warn based on the threat of the offender. It reasoned that, unlike *Tarasoff* where the targeted victim was precise and specifically designated, the offender's threat to a "young child residing in the neighborhood" was a "generalized threat to a segment of the population." *Id.* at 733. The *Thompson* Court concluded that there was no duty to warn about "nonspecific threats of harm directed at nonspecific victims." *Id.* at 735 (emphasis omitted). The California Supreme Court opined that the county authorities would have to issue the warnings to a broad segment of the population and that the warnings, by necessity, would have to be general in nature, which would pose practical obstacles and would have little value. *Id.* at 736. *Thompson* acknowledged that warnings to the public at large, as opposed to a named or readily identifiable victim, would "produce a cacophony of warnings that by reason of their sheer volume would add little to the effective protection of the public." *Id.* at 735.

Notably, the "class" the California Supreme Court confronted in *Thompson* (a young child residing in the neighborhood) was narrower than the class the majority accepts here (neighbor), which subsumes all children and adults in the patient's neighborhood, rather than only the children therein. While not binding, I find *Thompson's* rationale persuasive. Stated succinctly, no duty to warn should arise when the mental health patient describes the target of the threat in general terms, which does not allow for a clear identification of the intended victim and practical dissemination of an effective warning. As stated, if a threat against "young children residing in the neighborhood" is a generalized threat to a segment of the population, the same is true of the broader threat against a "neighbor."

In holding to the contrary, the Majority opines that the mental health professionals that treated Andrews "might have surmised, on 'a moment's reflection,' *see Tarasoff*, 551 P.2d at 345 n.11, that Andrews was targeting residents of his apartment building specifically, and particularly those on his floor with whom he interacted or had greater opportunity to interact." Maj. Op. at 20. I respectfully disagree. At various points in time, Andrews offered different descriptions of the targets of his violent threats. For instance, Andrews complained of general homicidal ideations towards anyone who "pissed him off," and towards "his neighbor." Appellee's Complaint, 8/27/2012, at ¶ 17. On other occasions, Andrews expressed homicidal ideations toward "others," his brother, an unidentified friend, and an unidentified person in his apartment building with whom he had a physical altercation. Appellee's Complaint at ¶ 24, 31; UPMC Mercy Hospital Inpatient Behavioral Health Psychiatric Evaluation, 5/11/2008, at 1. Similarly, Andrews once threatened that if he was not admitted to the hospital, he would "go across the street and kill someone and just go to jail where [he could] get the death sentence and die." WPIC Multidisciplinary Psychiatric Evaluation Report, 1/14/2008, at 6.

Andrews, however, never made a specific imminent threat against the collective group of tenants residing on the fourth floor of Hampshire Hall or the individuals residing in the building as a whole. Had Andrews done so, I would agree with the Majority's analysis. It is my position that the inquiry is not whether the victim falls into the broad category of the threat made, but whether the threat is sufficiently specific to provide a mental health professional with adequate information to know which third party to warn. *See Dunkle v. Food Service East, Inc.*, 582 A.2d 1342, 1346 (Pa. Super. 1990) (providing that "for the rule of liability announced in *Tarasoff* to be kept within workable limits, those charged with the care of potentially dangerous people must be able to know to whom to give warnings").

While residents of Hamphire Hall are most certainly Andrews' neighbors, as discussed above, the term "neighbor" encompasses a far broader range of individuals than only those that live in Andrews' building. It is only in hindsight that we know that Andrews acted upon his homicidal ideations by fatally stabbing a Hampshire Hall resident. If Andrews had acted upon his homicidal ideations against anyone living in Oakland, a section of the City of Pittsburgh with a population of about 22,000, one could argue that the term "neighbor" extended the duty to warn to all 22,000 residents. Such a *post hoc* examination of the factual circumstances presented cannot serve as the basis for imposing a legal duty upon mental health professionals. To do so would require the mental health professionals to be nothing less than clairvoyant.

There is a significant public interest in supporting the effective treatment of the mentally ill and protecting the rights of patients to privacy in their confidential communications with their mental health care providers. The public interest in safety from violent assaults indisputably outweighs these interests under limited circumstances where the target of the threat is named or readily identifiable and the mental health professional is able to disseminate an effective warning to those in danger. Where the mental health patient conveys a threat to a segment of the local community in general terms, however, as occurred here, a different balancing of interests must occur to avoid great harm to the treatment of the mentally ill. As alluded to in *Emerich*, if each ideation of a mental health patient is broadcast to a large segment of society, that patient would be ostracized from the very community that he or she seeks to join and the bond of trust between the patient and mental health professional would be broken.

As the Superior Court cogently recognized in a distinct but similar context, "[t]reatment of the mentally ill is not an exact science. If we allow recovery against mental health . . . providers for harm caused by their patients except in the clearest of

circumstances, we would paralyze a sector of society that performs a valuable service to those in need of mental health care." *F.D.P. v. Ferrara*, 804 A.2d 1221, 1232 (Pa. Super. 2002). I do not believe that the instant case presents anything close to the clearest of circumstances, which would warrant the imposition of a duty to warn upon the mental health care providers at issue.

Accordingly, while acknowledging the tragedy that has befallen an innocent young woman and her family, and the importance of taking necessary steps to prevent its recurrence, I am nevertheless compelled to conclude that a threat against a "neighbor," at least in the context of the urban environment at issue here, does not delineate a readily identifiable third party to whom a mental health professional owes a duty to warn. As Appellants did not have a duty to warn Lisa Maas of Andrews' homicidal ideations under the facts presented, and there are no genuine issues of material fact for the jury to resolve, summary judgment in favor of the mental health care providers is appropriate. It is for these reasons that I would reverse the judgment of the Superior Court, which affirmed the trial court's denial of Appellants' motion for summary judgment.

Chief Justice Saylor joins this dissenting opinion.