625 A.2d 1228

**Kenneth LEONARD, Shirley Ruffner and David L. Leonard, Administrators of The Estate of Elizabeth Gault, a/k/a Betty Gault, Appellants,**

v.

**LATROBE AREA HOSPITAL and George E. Mamo, M.D.**

Superior Court of Pennsylvania.

Argued Feb. 23, 1993.

Filed June 3, 1993.

---

5. *Commonwealth v. Shinn*, 368 Pa.Super. 436, 534 A.2d 515 (1987).

See also, 549 A.2d 997.

Anthony W. Debernardo, Jr., Greensburg, for appellants.

Sheila M. Weis, Pittsburgh, for appellees.

Before DEL SOLE, FORD ELLIOTT and CERCONE, JJ.

CERCONE, Judge:

This appeal is from the learned lower court's order granting appellees' motion for summary judgment. The salient question we are asked to discuss and decide is as follows: What is the responsibility of a psychiatrist or psychologist to warn a third person of the violent propensities of a patient who is under his or her care when the patient does not specifically identify the victim whom the patient later harms. In *Dunkle v. Food Service East, Inc.,* 400 Pa.Super. 58, 582 A.2d 1342 (1990), we said "we are cognizant of the extreme importance of this complex issue, as well as the public interest in its resolution." [1]

1. For the proper standard of review when considering an appeal from the grant of a motion for summary judgment, see *Marks v. Tasman,* 527 Pa. 132, 134–35, 589 A.2d 205, 206 (1991).

The facts, as disclosed in the pleadings, are as follows. James Gault was admitted to Latrobe Hospital's psychiatric unit after taking an overdose of aspirin on September 10, 1983. He remained there at the hospital for eight days under the care of Dr. George E. Mamo, M.D., Psychiatrist, until September 27, 1983. Two months after his release, Mr. Gault on November 25, 1983 shot and killed his wife Elizabeth. As a result, the children of Elizabeth Gault filed an action against the Latrobe Hospital and Dr. Mamo alleging that their mother's death was the result of the negligent care and treatment of Mr. Gault by the appellees. Appellants further allege that Dr. Mamo, upon release of Mr. Gault, failed to warn them or their mother of his dangerous propensities.

The appellees filed a motion for summary judgment on the premise that no common law rule or statutory requirement imposes upon them a duty to warn a non-patient of a patient's dangerous propensities under the circumstances of this case. On the other hand, the appellants contend that issues of fact exist on grounds supporting the claim that the acts of Mr. Gault were foreseeable by Dr. Mamo while he was under the doctor's care. The learned lower court granted appellees' motion for summary judgment and this appeal was subsequently perfected by the children of Mrs. Gault. After careful review of the record, briefs and the learned lower court's opinion, we affirm the judgment of the court.

The trial court below, in commenting on its granting of appellees' motion for summary judgment, said:

> The defendants maintain that there is no common law rule or statutory requirement which imposes a duty upon a psychiatrist to warn a non-patient of a patient's dangerous propensities. The Plaintiffs respond that an issue of fact exists and liability is dependent upon whether the acts of the patient were foreseeable.
>
> The Defendants' position is that the Plaintiffs have failed to allege facts which would support a finding that the patient threatened to inflict harm on a particular individual. By affidavit, Dr. Mamo has testified that no such communication existed. The Defendants argue that the Plaintiffs

have merely alleged that a hostile dependent relationship existed between the decedent and James Gault and that the Defendants were aware of the violent propensities of James Gault through the Plaintiffs.

The undisputed facts in the present matter indicate that the Defendants were aware that the decedent's husband had in the past, abused and threatened the decedent. At the time of the discharge of James Gault, it is also undisputed that there were signs of a hostile dependent relationship with the decedent and James Gault was diagnosed as having an organic brain syndrome with depression. The Plaintiffs have alleged that the Defendants failed to warn the family of James Gault's mental condition, his propensity towards violence, and to explain a "possible" confrontation with his wife.

Trial court opinion filed May 21, 1992 at 1–2 (citations omitted). Thus, conceding these allegations by appellants, the learned trial court found they were insufficient to present a cognizable claim and granted summary judgment in favor of appellees. Appellants' salient argument on appeal is that the lower court erred in declining to extend to a psychologist a duty to warn a third party of a patient's dangerous propensities and in granting summary judgment in favor of the doctor.

Prior to this court's decision in *Dunkle v. Food Service East Inc.*, *supra*, we had no precedential Pennsylvania law which gave guidance into this very important area of social law. In *Dunkle*, in the absence of *stare decisis*, we looked to other jurisdictions which had established views on the subject. In *Tarasoff v. Regents of Univ. of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), the California Supreme Court held that in limited circumstances a psychologist may have a duty to protect an identifiable and foreseeable victim of a patient's dangerous propensities.[2] In that case a patient confided his intention to a psychologist that he intended to kill

---

2. In *Tarasoff*, the patient confided his intentions to kill the plaintiffs' decedent to his psychologist. The patient was temporarily detained by campus police at the therapist's request. Upon patient's release by the police, he killed the plaintiffs' decedent. *Id.*, 17 Cal.3d at 430, 131 Cal.Rptr. at 19–20, 551 P.2d at 339–40.

his girlfriend, Tatiana. The California Supreme Court held that therapists cannot escape a liability merely because the victim is not their patient. "That when a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger." *Id.* at 431, 131 Cal.Rptr. at 20, 551 P.2d at 340.

Therapists may be required (1) to warn the intended victim or others who are likely to apprise the intended victim of the danger; (2) notify the police, or (3) take whatever steps that our reasonably necessary under the circumstances. *Tarasoff* explicitly held that where a victim is specifically identified and there is foreseeably a danger to that victim the therapist has the responsibility of notifying that victim concerning the violent propensities of a patient. *Id.* at 439, 131 Cal.Rptr. at 25, 551 P.2d at 345. By entering into a doctor/patient relationship, the therapist becomes sufficiently involved to assume some responsibility for the safety not only for the patient himself, but also of third parties whom the doctor knows to be threatened by the patient. *Id.* A therapist must exercise that reasonable degree of skill, knowledge and care ordinarily professed and exercised by members of that professed specialty under similar circumstances. *Id.*

*Tarasoff* also held that a patient's right of confidentiality must be weighed against the public interest in safety from violent assault; that there is no privilege of confidentiality after the psychologist has reason to believe that his or her patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger. *See id.* In *Tarasoff,* the court relied upon the fact that the psychiatrist had knowledge that a specific person was targeted for death at the hands of his patient. However, the California Supreme Court has refused to extend this rationale. In *Thompson v. County of Alameda,* 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980), the court was confronted with a claim against a county alleg-

ing negligence in releasing from custody a juvenile delinquent who was known to have dangerous and violent propensities toward young children and who within 24 hours after being released sexually assaulted and murdered plaintiffs' son who resided in the community into which the juvenile was released. In rejecting the plaintiffs' contention that their complaint stated a cause of action, the Supreme Court of California emphasized that in *Tarasoff* there was a specifically foreseeable and identifiable victim. While the *Thompson* court stated that the intended victim need not be specifically named, he must be "readily identifiable." *Thompson v. County of Alameda*, 27 Cal.3d at 752–53, 167 Cal.Rptr. at 76, 614 P.2d at 734.

The court in *Thompson* rejected the contention that as a neighborhood child, the plaintiffs' decedent was a foreseeable victim of the released juvenile. Under circumstances in which an individual poses a risk of danger to a significant portion of the community, the court declined to impose any duty to give warnings primarily because it determined that the value of such warnings was not great. In *Tarasoff*, the warnings were directed at making the victim aware of the danger to which she was "uniquely exposed." The threatened target was "precise." In such a case, "it is fair to conclude that warnings given discreetly and to a limited number of persons would have a greater effect because they would alert those particular targeted individuals of the possibility of a specific threat pointed at them." *Id.* at 755, 167 Cal.Rptr. at 78, 614 P.2d at 736.

In *Leedy v. Hartnett*, 510 F.Supp. 1125 (M.D.Pa.1981), *aff'd*, 676 F.2d 686 (3d Cir.1982), the U.S. District Court for the Middle District of Pennsylvania discussed cases from New Jersey, Florida, North Dakota and Nebraska analyzing the various views of those states, depending upon the facts and circumstances of the cases decided by them. With this assistance we addressed the issue in *Dunkle, supra*, in which we affirmed the trial court's granting summary judgment in favor of the psychiatrist and other professionals. In reviewing *Tarasoff, supra*, we held that the facts of *Dunkle* did not

result in the imposition of a duty contemplated by the California court. We stated in *Dunkle:*

This Commonwealth has never expressly adopted the California opinion in *Tarasoff.* However, even if we were to accept the *Tarasoff* holding as law in this jurisdiction, we would not find that decision determinative of the instant appeal. Conversely, we find that the *Tarasoff* rationale should be confined to a very limited circumstances presented in that case. We narrowly construe the California court's holding. Contrary to the appellants' position in the instant case, we will not interpret *Tarasoff* to mean that, in effect, strict liability should be imposed upon treating physicians for the wrongful acts of their patients where there is any reason to believe that a third party might be endangered by the patient's possible misconduct and the medical professional fails to inform the third party of same. Such a rule would be unworkable and illogical. More importantly, it would infringe upon other well established doctrines in our jurisprudence.

*Dunkle v. Food Service, East, Inc.,* 400 Pa.Super. at 67–68, 582 A.2d at 1346–47 (footnote omitted).

The patient in *Dunkle* did not communicate any inclination to harm his victim. In the instant case, with all the awareness on the part of Dr. Mamo that Mr. Gault could turn to violence, there was no notice or warning to Dr. Mamo that Mrs. Gault was specifically identified by Mr. Gault as the intended victim. In this case the plaintiffs themselves knew beforehand of Mr. Gault's dangerous inclination. It is a curious lapse in logic on plaintiffs' part to claim that Dr. Mamo should have warned them of information they already had, and with which they were familiar. Under the facts in *Dunkle, supra,* we declined to extend the duty to protect a victim who was non-identifiable in advance of her death and who arguably was a non-foreseeable third party victim. Thus, there is currently no common or statutory law, and no court decision in Pennsylvania, requiring that a psychiatrist or psychologist owes a duty to warn or otherwise protect a non-patient where the patient has not threatened to harm a specific person.

In *Dunkle* we concluded that "a psychologist (or psychiatrist) owes no duty to warn or otherwise protect a non-patient where the patient has not threatened to inflict harm on a particular individual." *Id.* at 68, 582 A.2d at 1347. Such a conclusion was necessary to support the patient-psychologist relationship and privilege. *Id.*

We find no common law rule that imposes a duty on a psychologist or psychiatrist to warn a non-patient of a patient's dangerous propensities. [Nor in Pennsylvania] is there a statutory duty to protect a non-patient from similar potential harm. In the absence of legislative directive or reforms that specifically address this problematic issue, we decline to impose such a stringent legal duty on health care professionals under the fact of this case.

*Id.* at 69, 582 A.2d at 1347.

The instant case is similar to *Dunkle* and *Leedy, supra,* on the issue of a psychiatrist's duty to warn against the dangers of a potentially violent patient. In *Dunkle,* we found no duty when the complainant alleged the following:

(1) Senie Eyer attended *"one or more counseling sessions"* with Bruce Tindal, provided by Additional Defendants; (2) Bruce Tindal "exhibited signs and symptoms of his deteriorating mental condition, indicating that he presented a danger to himself, and specifically to Senie Eyer;" (3) prior to March 16, 1985, Additional Defendants knew or should have known Bruce Tindal "would present and did present a danger to himself and to Senie Eyer;" (4) Additional Defendants were negligent in failing to warn Senie Eyer of, and protect her from, Bruce Tindal's dangerous propensities; and (5) Senie Eyer was the foreseeable victim of violent behavior on the part of Bruce Tindal.

*Id.* at 65, 582 A.2d at 1345 (quoting the trial court opinion).

In *Leedy, supra,* the issue was whether the personnel of the Veteran's Administration hospital had a duty to warn the Leedys that Hartnett, a former patient, exhibited violent inclinations when he drank. The personnel, aware that Hartnett would be staying with the Leedys when he left the hospital, failed to inform them of any potential danger. Sub-

sequently, Hartnett attacked the Leedys. The court in *Leedy* held that a victim may not be deemed "readily identifiable" merely because there exists a standard possibility that increased contact between a potentially violent patient and another will yield a higher likelihood of an attack. Thus, it would seem in the above cases, not only foreseeability of a general danger, but the specific identity of an intended victim, must be brought to the attention of the physician before it can be held that a physician has a duty to warn the intended victim. *See also Crosby by Crosby v. Sultz*, 405 Pa.Super. 527, 592 A.2d 1337 (1991) and *DiMarco v. Lynch Homes–Chester County*, 384 Pa.Super. 463, 559 A.2d 530 (1989), *aff'd*, 525 Pa. 558, 583 A.2d 422 (1990) (distinguishing similar issues on the facts). Under all the circumstances present in this case, we affirm the learned lower court's grant of a motion for summary judgment.

Judgment affirmed.

DEL SOLE, J. concurs in the result.