733 A.2d 623

**ESTATE OF Lynn S. WITTHOEFT**

v.

**James C. KISKADDON,**

**Appeal of Henry G. Witthoeft.**

Supreme Court of Pennsylvania.

Argued Dec. 9, 1997.

Decided July 8, 1999.

Mark David Frankel, York, for Estate of Lynn S. Witthoeft.

Craig A. Stone, Kathleen Doyle Yaninek, John F. Yaninek, Harrisburg, for James C. Kiskaddon.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

CAPPY, Justice.

We granted allocatur in order to address a significant and far-reaching issue of first impression. The issue before us is whether a physician may be held liable for injuries suffered by a third party in an automobile accident caused by the physician's patient. More specifically, will an ophthalmologist be held liable to a third party where the ophthalmologist failed to inform his patient or the Pennsylvania Department of Transportation (PennDOT) of the patient's poor visual acuity, and subsequently, the patient injured the third party while driving her automobile? For the reasons set forth herein, we affirm the order of the Superior Court.

A brief recitation of the relevant facts, as set forth in the complaint, is necessary to understand and resolve this issue.[1] On July 6, 1993, Appellant's decedent, Lynn S. Witthoeft, was bicycling on Walker Road, Chambersburg, Pennsylvania. As Ms. Witthoeft approached Limekiln Drive, an automobile driven by Ms. Helen J. Myers struck her. Ultimately, Ms. Witthoeft died from the injuries sustained in the accident.

Prior to the events of July 1993, Ms. Myers had been a regular patient of Appellee, Dr. James C. Kiskaddon. Dr. Kiskaddon is a licensed physician whose practice of medicine is limited to ophthalmology. Four months prior to the accident, in March 1983, Dr. Kiskaddon performed a visual examination of Ms. Myers. His examination revealed that Ms. Myers had a visual acuity of $20/80$ combined.

Appellant, Ms. Witthoeft's spouse, Henry G. Witthoeft, as personal representative of the decedent and on his own behalf, filed a complaint against Dr. Kiskaddon. Appellant's complaint consisted of three counts: a survival action, a wrongful death action, and a claim for punitive damages. The complaint alleged that the physician failed to inform Ms. Myers that she was not "legally authorized" to drive a motor vehicle in Pennsylvania and that Dr. Kiskaddon failed to report the results of Ms. Myers' examination to PennDOT as required by law. Appellant asserts that Ms. Myers' inability to see was the direct and proximate cause of the accident.

Dr. Kiskaddon filed preliminary objections in the nature of a demurrer to the complaint as well as to the specific allegations in the complaint. The Court of Common Pleas of Franklin County found that Dr. Kiskaddon owed no duty to

1. This appeal comes to us in the procedural context of the trial court granting preliminary objections in the nature of a demurrer. In our review of the trial court's decision to grant the preliminary objections in the nature of a demurrer, all material facts as set forth in the complaint as well as all inferences reasonably deducible therefrom are accepted as true. The core issue presented by the demurrer is whether on the facts averred, the law says with certainty that recovery is impossible. Where doubt exists, this doubt should be resolved in favor of overruling the demurrer. *Emerich v. Philadelphia Center For Human Development, Inc., et al.,* 554 Pa. 209, 720 A.2d 1032 (1998); *Kyle v. McNamara & Criste,* 506 Pa. 631, 487 A.2d 814 (1985).

Ms. Witthoeft, as she was not a foreseeable victim of Dr. Kiskaddon's act or omission. Thus, the trial court granted Appellee's preliminary objections.

The Superior Court affirmed. Specifically, the three-member panel of the Superior Court unanimously determined that there was no duty to Ms. Witthoeft because there was no foreseeability of Ms. Witthoeft being the object of the physician's failure to notify PennDOT. Stated by the court another way, the injury was not assignable to Dr. Kiskaddon as a breach of a duty to disclose Ms. Myers' visual infirmity and its effect. *Estate of Witthoeft v. Kiskaddon,* 450 Pa.Super. 364, 676 A.2d 1223 (1996).

We granted allocatur to examine this issue which is all-important to the physicians and citizens of this Commonwealth.

Appellant first argues that under the laws of this Commonwealth, Dr. Kiskaddon had a legal obligation to report to PennDOT Ms. Myers' poor vision. In essence, Appellant looks to these notification requirements and from them contends that they authorize a private cause of action for damages against Dr. Kiskaddon based upon the physician's failure to notify PennDOT of Ms. Myers' poor vision.

The Motor Vehicle Code contains provisions regarding a driver's eligibility to obtain, and to retain, a driver's license. 75 Pa.C.S.A. § 1518. These provisions encompass, inter alia, medical conditions that are presumed to impair driving. Pursuant to 75 Pa.C.S.A. § 1517, a Medical Advisory Board is charged with defining various mental and physical conditions that are deemed to affect the ability of a person to drive safely. Section 1518(b) requires physicians and certain others to report to PennDOT the name, date of birth, and address of each person diagnosed as having a specific disorder or disability. PennDOT may recall the operating privileges of one whose incompetence to drive a motor vehicle has been established under the Code. 75 Pa.C.S.A. § 1519. The list of disorders and disabilities are found at 67 Pa.Code § 83.3–83.5.

Specifically, the regulations promulgated under the Motor Vehicle Code require that:

> these physical and mental criteria shall be used by physicians in conducting physical examinations of applicants for learner's permits and driver's licenses and by physicians and other persons authorized to diagnose and treat disorders and disabilities covered in this chapter in determining whether a person examined by the [physician] should be reported to the Department as having a disorder affecting the ability of the person to drive safely.

67 Pa.Code § 83.1.

Visual standards are found in 83.3:

> (c) *Visual acuity of less than 20/70.* A person with visual acuity of less than 20/70 combined vision with best correction is not authorized to drive.

67 Pa.Code § 83.3(c).

Thus, Appellant seeks to impose a new liability on physicians for motor vehicle accidents caused by their patients through the physician's failure to comply with the notification requirements found in the Motor Vehicle Code.[2]

■ We must determine whether the Motor Vehicle Code, or the regulations promulgated thereunder, expressly or implicitly provide for a private remedy. First, neither the Code nor the regulations expressly authorize a private cause of action for a failure to report a vision problem. Section 1518(b) of the Motor Vehicle Code merely requires physicians and others to report to PennDOT information on persons diagnosed as having a disorder or disability that PennDOT's

---

2. It is critical to note that Appellant has failed to allege in his complaint that Ms. Myers' visual acuity is 20/70 "with best correction." The relevant regulation is clear that a person with visual acuity of less than 20/70 combined vision "with best correction," i.e., with the use of corrective lenses, is not authorized to drive. Obviously, unless Appellant can establish that the 20/70 measurement is a "best corrected" measurement, Ms. Myers' vision would not have fallen below PennDOT standards and Dr. Kiskaddon would have had no duty to inform PennDOT of the status of Ms. Myers' vision. However, because of our resolution of this issue, and because of the stage of the proceedings, we will assume, arguendo, that Appellant's visual acuity is 20/70 with best correction.

Medical Advisory Board has determined affects their ability to drive. Such a report triggers PennDOT's investigation and possible further action to suspend the subject's driver's license. However, under the statute, a physician's failure to notify PennDOT of a disorder does not give rise to a private remedy to Appellant or anyone else. Simply stated, the terms of the statute do not expressly create a private cause of action. Thus, we are required to consider whether the statute implicitly creates a private remedy.

■ The United States Supreme Court has offered a three-prong analysis to assist in determining whether a private remedy is implicit in a statute not expressly providing one. *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The three factors under the *Cort* decision are:

> [f]irst, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,'—that is, does the statute create a ... right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

*Id.* at 78, 95 S.Ct. 2080 (citations omitted)(emphasis original).

We believe that the *Cort* decision offers a beneficial framework within which to analyze whether the statute at issue implicitly creates a private right of action.[3] As the second *Cort* factor has been recognized as the "central inquiry" of the analysis, we begin with that prong. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Alfred M. Lutheran Distributors, Inc. v. A.P. Weilersbacher, Inc.*, 437 Pa.Super. 391, 650 A.2d 83, 87 (1994); *allocatur denied*, 540 Pa. 627, 658 A.2d 791 (1995). Nowhere does the language found in the statute suggest that private parties may bring an action seeking damages for a failure to comply with the notification provisions. The intent of the reporting

---

**3.** The *Cort* decision also contains a fourth prong, "is the cause of action one traditionally relegated to state law ... so that it would be inappropriate to infer a cause of action based solely on federal law?" *Id.* Obviously, this fourth prong is inapplicable to a state statute.

requirements is clear from its face. The statute simply requires notification by a physician to PennDOT under certain circumstances. Additionally, Appellant does not offer any legislative history to illuminate the General Assembly's intent. Our review finds that the statutory history offers no guidance as to this issue. Indeed, to the extent the statute discusses civil actions at all, it precludes a private cause of action. 75 Pa.C.S.A. § 1518(f)("[n]o civil ... action may be brought against any person or agency for providing the information required under this system.").[4]

This court is hesitant to infer or imply a legislative intent where the impact of such a leap would constitute a drastic change in law. *Accord Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745 (1998). We find that the second prong of the *Cort* analysis has not been satisfied.

Turning to the remaining secondary prongs, we must first consider whether allowing a cause of action against a physician would be consistent with the underlying statutory scheme. The statutory scheme authorizes PennDOT to adopt certain physical and mental criteria, including vision standards, for the licensing of drivers. These physical and mental criteria are used in conducting physical examinations of applicants for learner's permits and driver's licenses. The medical criteria also apply to subsequent examinations of drivers by their physicians. Upon discovery of certain disorders and disabilities covered by the regulations, physicians are required to notify PennDOT. Thus, rather than requiring the driving public to submit to periodic physical examinations by PennDOT, the Commonwealth has required physicians to report certain disorders and disabilities to PennDOT to assist it in making a determination of the propriety of maintaining an

---

**4.** It is interesting to note that the Commonwealth Court has held that PennDOT may not be sued for incorrectly failing to revoke a driver's license under these provisions. *Giovannitti v. Com. Dept. of Transportation*, 113 Pa.Cmwlth. 572, 537 A.2d 966 (1988), *alloc. denied*, 519 Pa. 669, 548 A.2d 258 (1988). It would be quizzical indeed for the General Assembly to allow a physician to be sued for failing to notify PennDOT of a certain mental or physical condition but provide no remedy when, after proper notification by a physician, PennDOT wrongly failed to act.

operator's license. In essence, the statutory scheme, which enlists physicians to report certain conditions, is merely a benefit to the Commonwealth by relieving it of an administrative burden. The statute is concerned with obtaining information regarding licensed drivers rather than any relationship between third parties and physicians. While it can be asserted that a private remedy would encourage doctors to notify PennDOT of any disorders, this policy concern is better addressed to the General Assembly than to the judiciary. We simply do not believe that a private remedy is consistent with the purpose or spirit of the Motor Vehicle Code. Thus, consideration of this prong of the analysis does not persuade us that a private cause of action should be recognized.

Finally, while the statute benefits the public at large, it does not benefit Ms. Witthoeft as a member of a particular class for whose "especial" benefit the statute was enacted. *Cort,* 422 U.S. at 78, 95 S.Ct. 2080; *Crosby* 592 A.2d at 1348 (Del Sole, concurring opinion). The legislation does not benefit a particular class of persons but is rather meant to identify potential impaired drivers so that they may be screened to determine if their operating privileges should be revoked. *Id.* This court is hesitant to provide a cause of action to the public at large and in certain situations has limited causes of action to those victims who are part of a foreseeable and identifiable class. *See generally Emerich v. Philadelphia Center for Human Development,* 554 Pa. 209, 720 A.2d at 1034 (1998). Likewise, we note that the United States Supreme Court has been extremely reluctant to imply private causes of action under statutes that "create duties on the part of persons for the benefit of the public at large." *Cannon v. University of Chicago,* 441 U.S. 677, 692 n. 13, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *See generally California v. Sierra Club,* 451 U.S. 287, 294–95, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981).

The violation of a statute and the fact that some person suffered harm does not automatically give rise to a private cause of action in favor of the injured person. This court will not engraft a private cause of action onto the statute without further guidance from the General Assembly. In this

Commonwealth, never before has liability been imposed on a physician for damages suffered by a member of the general public as a result of a motor vehicle accident caused by a patient. Simply stated, this court will not find a private cause of action based on the reporting requirements under the Motor Vehicle Code because the General Assembly has not so expressly provided and because there is no statutory basis to imply the same.[5]

Appellant also makes a general assertion that Dr. Kiskaddon owed a duty to Appellant's decedent as a foreseeable victim of the physician's omissions. That is, Dr. Kiskaddon breached a duty to Ms. Witthoeft by failing to inform Ms. Myers of her poor visual condition, and this failure to notify constituted a direct and proximate cause of Ms. Witthoeft's death. In support of his argument, Appellant cites to this court's decision in *DiMarco v. Lynch Homes–Chester County, Inc.*, 525 Pa. 558, 583 A.2d 422 (1990).

In *DiMarco*, this court held that a physician may be liable to a non-patient third person who is injured because of the physician's negligent treatment of a patient. In that case, a physician misinformed his patient, a blood technician who had been accidentally exposed to the communicable disease hepatitis B, that if she remained symptom free for six weeks she was not infected with the disease. The physician told the patient to refrain from sexual relations for six weeks. In fact, the patient abstained from sexual relations with her boyfriend for

5. Additionally, Appellant asserts that Dr. Kiskaddon failed to inform Ms. Myers that she was "not legally authorized to drive." Appellant is placing the cart before the horse. First, the General Assembly could have mandated patient notification regarding poor vision and the patient's driving but did not do so. Moreover, there is no guarantee that once a report was filed, Ms. Myer's operating privileges would have been revoked. As Dr. Kiskaddon points out, whether Ms. Myers was legally permitted to drive is a determination to be made by PennDOT. At the time of Ms. Myers' examination, the filing of an appeal by a driver acted as a supersedeas and the driver's operating privileges could not be revoked until a final determination of the matter. 75 Pa.C.S.A. § 1550(b). Thus, based upon a certain visual examination, Dr. Kiskaddon would be in error to notify a patient that he or she was not legally permitted to drive. A physician simply cannot be held liable for failing to give a warning that is inaccurate.

eight weeks. Still being symptom free, the patient resumed sexual relations with her partner. Subsequently, both the patient and her boyfriend were diagnosed with hepatitis B. The patient's boyfriend brought suit against certain physicians, alleging their negligence in failing to warn the patient that having sexual relations within six months could expose her sexual partner to the disease. This court found that the physician's duty encompassed third parties whose health could be threatened by contact with the diseased patient, i.e., the duty of the physician in such circumstances extended to those within the foreseeable orbit of risk of harm. Thus, foreseeability was the essence of the determination of duty.

Appellant contends that like the plaintiff in *DiMarco*, Witthoeft fell within the foreseeable risk of harm when Dr. Kiskaddon failed to inform Ms. Myers of her poor eyesight. We believe that *DiMarco* is distinguishable for a number of reasons.

Initially, the focus of the court in *DiMarco* was on the unique medical condition at issue. Specifically, the court placed great emphasis on the fact that the injury involved was a communicable disease. Thus, the threat of the spread of communicable disease was paramount in the court's mind. *See Troxel v. A.I. Dupont Institute,* 450 Pa.Super. 71, 675 A.2d 314 (1996), *alloc. denied,* 546 Pa. 668, 685 A.2d 547 (1996). In the context of a communicable disease, the physician's duty to provide accurate information is critical because information regarding the risks of contacting the disease or the dangers of transmitting the disease are often times not known to the general public. Thus, in this context, the education and advice provided by the physician about the communicable disease are of great import and the finding of a duty may have been reasonable. However, in the case *sub judice,* we are faced with poor vision, certainly not a communicable disorder or a disorder of imminent threat to health. Finally, it is a condition of which the patient is well aware. Thus, the policy reasons present in *DiMarco* are noticeably absent in this case.

Additionally, *DiMarco* dealt with the giving of incorrect advice by the health care professional. In *DiMarco*, the third

party actually relied upon the erroneous medical advice. Here there was no incorrect advice but an allegation that the physician failed to inform his patient that she had poor eyesight, again, a condition of which the patient would have been aware. There is no indication that Ms. Witthoeft or Ms. Myers relied to their detriment upon erroneous advice from Dr. Kiskaddon to his patient. Indeed, Ms. Myers was in the best position to know the effects, if any, that her visual acuity would have on her driving. Thus, we find *DiMarco* inapposite to the present matter and will not extend its holding to impose liability upon a medical provider under the circumstances of this case.

Although not directly on point, both the Franklin County Court of Common Pleas and the Superior Court found the decision in *Crosby by Crosby v. Sultz*, 405 Pa.Super. 527, 592 A.2d 1337 (1997) to be instructive. The decision in *Crosby*, like the case *sub judice*, involved Motor Vehicle Code reporting requirements. The facts of that case disclose that plaintiffs, who were pedestrians, were injured by a vehicle operated by James Jackson. Plaintiffs brought suit against a Dr. Marvin Sultz alleging that Jackson had sustained a temporary lapse of consciousness and lost control of the vehicle because of his diabetic condition. The plaintiffs claimed that Dr. Sultz not only should have counseled Jackson not to drive, but also should have reported him to PennDOT pursuant to the Motor Vehicle Code. The relevant reporting requirement, 67 Pa.Code § 83.5(a)(2), mandated notification if the patient suffered from unstable or brittle diabetes, unless there has been a continuous period of at least six months freedom from a related syncopal attack.

The *Crosby* court held that the doctor did not breach a duty of care to the plaintiffs injured when the doctor's patient lost consciousness while operating a motor vehicle. While the loss of consciousness allegedly arose from a diabetic condition known to Dr. Sultz, the court noted that Jackson had not previously suffered a loss of consciousness as a result of his

diabetes. Thus, the notification obligation under 67 Pa.Code § 83.5 never arose.

However, the court went on to state that:

[e]ven if Dr. Sultz *did* have a duty to disclose Jackson's name to the Department of Transportation, we find no logical connection between that obligation and a duty of care to the [plaintiffs]. The [plaintiffs] were *not* foreseeable victims of *Dr. Sultz's* actions or inactions. *See Zanine v. Gallagher*, 345 Pa.Super. 119, 497 A.2d 1332 (1985) (scope of duty is limited to those risks that are reasonably foreseeable by the actor under the circumstances); *Alumni Ass'n, Delta Zeta Zeta of Lambda Chi Alpha Fraternity v. Sullivan*, 369 Pa.Super. 596, 535 A.2d 1095 (1987) (accord), *aff'd*, 524 Pa. 356, 572 A.2d 1209 (1990). *See also Doyle v. South Pittsburgh Water Co.*, 414 Pa. 199, 207, 199 A.2d 875, 878 (1964) (duty extends to those "falling within the foreseeable orbit of risk of harm."). To discount the important element of foreseeability here is effectively to overrule well-established and precedential tort law, as well as to extend liability limitlessly to treating physicians vis-à-vis third-party victims.

*Crosby*, 592 A.2d at 1345 (emphasis in original).[6]

Thus, the court noted a lack of foreseeable risk and refused to find a duty on the part of the physician. The court added that to hold otherwise would be to render a doctor strictly liable for the conduct of his patients.

■ Having considered these cases, we agree with the Superior Court that the issue in the present matter is more akin to *Crosby* than to the situation in *DiMarco*. It may be reasonably foreseeable that a patient exposed to an infectious

6. Additionally, cases involving mental health professionals' duty to warn third parties of threats by their patients are consistent with this rationale. Although not directly on point, case law from this Commonwealth, including the recent decision from this court in *Emerich*, makes clear that a duty to warn in this context only arises where there is an identifiable and foreseeable third party victim. *Emerich; see also Leonard v. Latrobe Area Hospital*, 425 Pa.Super. 540, 625 A.2d 1228 (1993); *Dunkle v. Food Service East, Inc.*, 400 Pa.Super. 58, 582 A.2d 1342 (1990).

and communicable disease will injure a third party unless properly informed to prevent the spread of the disease. However, we believe that it is an unreasonable extension of the concepts of duty and foreseeability to broaden a physician's duty to a patient and hold a physician liable to the public at large within the factual scenario of this case. This is especially true where, as here, Dr. Kiskaddon did not cause or aggravate a medical condition that affected the patient's driving and the patient was necessarily aware of her medical condition.

Appellant's decedent is simply not a foreseeable victim that this court will recognize. We will not stretch foreseeability beyond the point of recognition for to do so will be to make liability endless. To allow liability in this case would be to make physicians absolutely liable for the various acts of their patients. This we will not countenance. We recall the admonition eloquently stated by Chief Justice Flaherty in his concurring opinion in *Emerich;* it is a point equally applicable to the matter *sub judice:*

> Yes, one can reason in so many instances that an extension of liability is merely a small step flowing naturally and logically from the existing case law. Yet each seemingly small step, over time, leads to an ever proliferating number of small steps that add up to huge leaps in terms of extension of liability. At some point it must stop and I would draw the line in this area of the law with what is expressed by the court in this case—no further.

*Emerich,* 720 A.2d at 1045.

For the above-stated reasons, we affirm the order of the Superior Court.[7,8]

7. Assuming a factual basis existed to compel notification to PennDOT under the Motor Vehicle Code, Dr. Kiskaddon's failure to report Ms. Myers' visual acuity to PennDOT is not to be condoned. However, it is for the General Assembly to determine the appropriate penalty for noncompliance, not for this court to render the physician liable for injuries sustained in an automobile accident caused by his patient.

8. Appellant also asserts liability based upon Restatement (Second) of Torts, § 324A(a). Appellant asserts that the factual underpinnings of such a claim are contained in his complaint. However, while Appellant

Justice ZAPPALA concurs in the result.

Justice NIGRO files a dissenting opinion.

NIGRO, Justice, dissenting.

I must respectfully dissent because the majority fails to see the forest for the trees. Contrary to the position of the majority, I believe that an ophthalmologist should be held liable to a third party for injuries caused by his patient's operation of a motor vehicle when the ophthalmologist has failed to inform the Pennsylvania Department of Transportation (PennDOT) of that patient's poor visual acuity, as he is required to do by law.

As noted by the majority, Helen Myers was a patient of Dr. Kiskaddon, an ophthalmologist. In March of 1983, Dr. Kiskaddon examined Ms. Meyers and determined that she had a visual acuity of $^{20}\!/_{80}$ combined. Under the Motor Vehicle Code, a person with visual acuity of less than $^{20}\!/_{70}$ combined with best correction is not authorized to drive and a physician is required to report a patient diagnosed with this level of visual acuity to PennDOT. Nonetheless, Dr. Kiskaddon failed to notify PennDOT of Ms. Meyers' condition and allegedly failed to inform Ms. Meyers that she was not legally authorized to drive in Pennsylvania.

Four months after Dr. Kiskaddon's examination of Ms. Meyers revealed that her visual acuity was less than $^{20}\!/_{70}$ combined, Ms. Meyers was operating a motor vehicle on Walker Road. She struck a bicycle being ridden by Lynn Witthoeft, who died as a result of injuries sustained in the accident. Appellant, as Ms. Witthoeft's husband and the personal representative of her estate, filed a complaint against

notes that preliminary objections were briefed and argued before the trial court, he does not assert that he argued this theory before the trial court. Thus, Appellant only raised this legal theory for the first time on appeal to the Superior Court. We, like the Superior Court, find the issue to be waived. Pa.R.A.P. 302(a). Moreover, Appellant now fails to offer any meaningful argument with respect to liability under section 324A(a). We do not believe it appropriate to make Appellant's arguments for him, and therefore, will not address his alternative plea for relief under section 324A(a).

Dr. Kiskaddon. The complaint alleged that Ms. Meyers' inability to see had caused the accident and that Dr. Kiskaddon was liable for failing to inform Ms. Meyers that she was not legally authorized to drive in Pennsylvania due to her poor eyesight and for failing to notify PennDOT of Ms. Meyers' impaired visual acuity.

As the majority explains, the Motor Vehicle Code requires physicians to report patients to PennDOT who are diagnosed with certain conditions that would affect their ability to drive safely. Specifically, section 1518(b) of the Code requires physicians to report to PennDOT the name, date of birth, and address of each person diagnosed as having a specified disorder or disability. 75 Pa.C.S. § 1518(b). The applicable list of disorders and disabilities, found in the regulations promulgated under the Code, includes a person diagnosed with a visual acuity of less than $^{20}/_{70}$ combined. *See* 67 Pa.Code § 83.3.

These provisions clearly imposed a duty on Dr. Kiskaddon to report Ms. Meyers' eye examination results to PennDOT. The majority finds, however, that Dr. Kiskaddon's failure to comply with his statutory duty does not give rise to a private remedy essentially because such a remedy is inconsistent with the purpose of the Motor Vehicle Code's reporting requirements and the general statutory scheme of the Code. I cannot agree.

In my view, the purpose of the reporting requirements could not be clearer. Requiring doctors to report to PennDOT those drivers who have been diagnosed with certain medical conditions that will affect their ability to drive safely, such as a visual acuity of less than $^{20}/_{70}$, serves first and foremost to protect motorists and pedestrians from injury caused by persons who should not be driving because it is unsafe for them to do so. As stated by the Secretary of Transportation upon readoption of the reporting requirements:

The Department also explained that without readoption of these regulations, the Department would be left without any medical standards for licensure; consequently, even individ-

uals with severe vision problems ... would be eligible for licensure, **creating an unacceptable level of risk on our highways.**

PA Bulletin, Vol. 21, No. 16, April 20, 1991 (emphasis added).

This statement reflects what I believe to be the obvious intent of the reporting requirements at issue here—a doctor is required to report a person diagnosed with severe visual impairment, such as Ms. Meyers, to PennDOT in order to protect people on the highways from drivers who are too visually impaired to drive safely. In my view, a doctor's duty to report certain medical conditions to PennDOT is not merely an administrative benefit to the Commonwealth, as the majority suggests. Rather, under the Code, the doctor serves as a critical link in highway safety by alerting PennDOT to those drivers who have been diagnosed with medical conditions that put them at risk of injuring themselves or others on the road. Without compliance by the doctors of this Commonwealth, PennDOT's ability to act preventatively and proactively in removing medically unsafe drivers from the road **before** a traffic incident occurs would be severely hampered. In light of a doctor's express statutory duty and what I see as the plain intent of the reporting requirements, it seems only logical that a doctor should be liable to a third party for injuries caused by a patient's poor visual acuity when the doctor has failed to report that patient's condition to Penn-DOT.

Similarly, in *DiMarco v. Lynch Homes–Chester County, Inc.*, 525 Pa. 558, 583 A.2d 422 (1990), this Court held that a physician owes a duty to a third-party where the physician fails to properly advise a patient who has been exposed to Hepatitis B, and the patient, relying on the doctor's advice, spreads the disease to a third party. The *DiMarco* Court noted that Pa.Code § 27.115 specifically requires physicians to report cases of Hepatitis B to the local authority and that such a statutory duty was enacted for the purpose of protecting third parties. *Id.*, 583 A.2d at 425. As in *DiMarco*, Dr. Kiskaddon had a clear statutory duty to report Ms. Meyers' poor visual acuity to PennDOT, but failed to do so. In both

this case and in *DiMarco,* the statutory duty was enacted to protect third parties. Thus, I believe that Dr. Kiskaddon's failure to report Ms. Meyers' condition to PennDOT exposes him to liability to a third party under *DiMarco.*[1]

In distinguishing this case from *DiMarco,* the majority first notes that the *DiMarco* Court placed great emphasis on the medical condition at issue there—communicable diseases. The majority observes that because this case, unlike *DiMarco,* does not involve a "communicable disorder or a disorder of imminent threat to health," it does not implicate the policy issues present in *DiMarco.* I find this reasoning unpersuasive, especially when the facts of this case demonstrate that a person who drives when he or she is severely visually impaired can kill another motorist or pedestrian. Thus, although poor vision may not be a communicable disease, I cannot agree with the majority that poor vision in circumstances such as these should not be considered an imminent public health risk. In both cases, the doctor's failure to comply with his statutory duty created an immediate clear and present danger to third parties.

I also cannot agree with the majority's conclusion that *DiMarco* is distinguishable from this case because Ms. Myers did not rely on erroneous advice given by Dr. Kiskaddon but rather was "in the best position to know the effects, if any, that her visual acuity would have on her driving." Although Ms. Meyers most likely realized that her vision was failing, I can only assume that Ms. Meyers went to her eye doctor, as a specialist, seeking information and advice regarding her visual acuity. Since ophthalmology is Dr. Kiskaddon's specialty, it would seem to me that he, and not Ms. Meyers, was in the best position to understand the effects of Ms. Myers' poor

1. The majority concludes that unlike the victim in *DiMarco,* Ms. Witthoeft was not a foreseeable victim of Dr. Kiskaddon's failure to act in this case. I disagree. Instead, I believe that a person lawfully bicycling on a public road, such as Ms. Witthoeft, is within the foreseeable risk of harm created by a doctor's failure to inform a patient that her visual acuity is less than what the legal standard requires for driving in Pennsylvania and to report that patient's impaired visual acuity to PennDOT.

visual acuity on her driving. Thus, it makes sense that the Motor Vehicle Code imposes the duty on the doctor, and not the patient, to report medical conditions which are presumed to impair a patient's ability to drive.

In sum, it seems clear that the legislature enacted the reporting requirements to ensure that physicians report patients with certain medical conditions so that PennDOT can take steps to prevent medically-impaired individuals from driving and harming themselves or others who are on the road. Because Dr. Kiskaddon failed to comply with his statutory duty, I believe that he owes a duty to a third party who was injured as a result of that noncompliance. Thus, I would reverse the order of the Superior Court, affirming the trial court's grant of Appellees' preliminary objections in the nature of a demurrer, and let this case proceed to trial.