**Stever v. Antonowicz**

120

*Aaron J. Freiwald,* for plaintiffs.
*Frank J. Hartye,* for defendants.

SULLIVAN, *J.,* May 5, 2006—We now have before us disposition of defendants' preliminary objections to plaintiffs' second amended complaint.

## PROCEDURAL/FACTUAL HISTORY

Plaintiffs initiated this action with a writ of summons filed December 12, 2005, followed by a complaint December 23, 2005. The complaint alleges professional

liability against all defendants, specifically negligence against defendant Dr. Antonowicz, and vicarious liability against Altoona Hospital and/or Altoona Regional Medical Center.

Plaintiff's injuries were caused by an automobile accident on August 5, 2004, when Crystal M. Ickes, a patient of defendant Dr. Antonowicz, was driving and struck plaintiffs' car. Plaintiffs have asserted a professional liability claim against Dr. Antonowicz, Altoona Hospital and Altoona Regional Health System based on professional liability due to gross negligence, willful misconduct, and/or reckless conduct in prescribing Ms. Ickes a medication which could cause her to have seizures while driving, yet did not take any precautionary steps to prevent harm to third parties as a result of dangerous driving.

Defendants filed preliminary objections to the original complaint January 17, 2006. Before disposition of the objections, plaintiffs filed an amended complaint February 7, 2006. Defendants then filed preliminary objections to the amended complaint February 16, 2006. Plaintiffs filed a second amended complaint March 10, 2006, to which defendants again filed preliminary objections on March 21, 2006. Defendants' brief in support of preliminary objections to plaintiffs' second amended complaint was filed on March 21, 2006, and plaintiffs' brief in opposition to preliminary objections was filed on April 10, 2006. Following oral arguments on April 24, 2006, we now proceed to disposition.

## DISCUSSION

Defendants' preliminary objections, a demurrer and a motion to strike the demand for punitive damages, argue

that plaintiffs' second amended complaint fails to set forth sufficient facts or allegations to support either the cause of action set forth in the complaint against defendants or a basis for punitive damages.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. *Smith v. Wagner,* 403 Pa. Super. 316, 320, 588 A.2d 1308, 1310 (1991). Further, "[w]hen sustaining a preliminary objection would result in dismissal of an action, the objection should be sustained only in cases which are free from doubt." *Constantino v. University of Pittsburgh,* 766 A.2d 1265, 1268 (Pa. Super. 2001), citing *Engle v. Engle,* 412 Pa. Super. 425, 430, 603 A.2d 654, 657 (1992).

The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer. *Constantino,* 766 A.2d at 1268, citing *Jackson v. Garland,* 424 Pa. Super. 378, 381, 622 A.2d 969, 970 (1993). A demurrer should be granted only if, "on the facts averred, the law says with certainty that no recovery is possible." *Ham v. Sulek,* 422 Pa. Super. 615, 622, 620 A.2d 5, 9 (1993).

The issue before us is whether a physician may be held liable for injuries suffered by a third party in an automobile accident caused by the physician's patient. Surprisingly, this issue has only been addressed by our appellate courts in a few cases.

Counsel for both parties agree that the following cases have addressed this issue. Each case will be reviewed separately.

The first case, *DiMarco v. Lynch Homes—Chester County Inc.,* presented the issue of whether a physician owes a duty of care to a third party where the physician fails to properly advise a patient who has been exposed to a communicable disease, and the patient, relying upon the advice, spreads the disease to a third party, 525 Pa. 558, 559, 583 A.2d 422, 423 (1990). The Pennsylvania Supreme Court held that "when a physician treats a patient who has been exposed to or has contracted a communicable and/or contagious disease, it is imperative that the physician give his or her patient the proper advice about preventing the spread of disease." *Id.* at 561-62, 583 A.2d at 424. The Supreme Court also discussed the foreseeability element necessary to find such a duty as found in the Restatement (Second) of Torts §324A, which requires that a complaint must contain factual allegations sufficient to establish the legal requirement that the defendant has undertaken to render services to another which he should recognize as necessary for the protection of a third party. *Id.,* citing *Cantwell v. Allegheny County,* 506 Pa. 35, 41, 483 A.2d 1350, 1353-54 (1984). Because there was a readily identifiable class of persons whose health was likely to be threatened by the patient, foreseeability was present and the court held there was a cause of action against the physician. *Id.* at 562, 583 A.2d at 425.

In subsequent cases, the appellate courts declined to extend *DiMarco.* For example, in *Crosby v. Sultz,* 405 Pa. Super. 527, 592 A.2d 1337 (1991), the Superior Court addressed whether a cause of action may be sustained against a doctor where the doctor failed to monitor his diabetic patient's conduct. Due to alleged lack of proper treatment of the diabetic condition on the part of the

physician, the patient sustained a temporary lapse of consciousness while driving, causing him to lose control of his vehicle and cause an accident which injured plaintiffs. *Crosby,* at 530, 592 A.2d at 1339. The Superior Court held that a doctor has no duty to control his patient's driving habits or to protect third persons from the injuries occasioned by unforeseeable accidents. *Id.* at 530, 592 A.2d at 1338.

The Pennsylvania Superior Court next addressed the issue of whether a physician should be "held liable for injuries that occurred in an automobile accident where that accident was caused by his patient's lapse of conciousness . . . where the patient was en route from the doctor's office to her home immediately subsequent to that physician's negligent treatment of [an] unstable diabetic condition" in *Waddell v. Bowers v. York Hospital,* 415 Pa. Super. 469, 471, 609 A.2d 847, 848 (1992).

Here, the *Waddell* court affirmed the lower court's grant of a demurrer for failure to state a claim upon which relief could be granted, stating that unlike *DiMarco,* where it was foreseeable that the physician's treatment of another for a communicable disease was necessary for the protection of readily identifiable third parties, the plaintiffs failed to establish a duty owed to them by the physician despite argument from the plaintiffs that the physician knew the patient was about to operate a motor vehicle and could foresee that their treatment of patient was necessary for the protection of third parties. *Waddell* at 473, 609 A.2d at 848. Despite this argument, the court found no duty to third parties as there was no allegation that appellant had a "propensity or pattern of lapsing into unconsciousness due to

her hypoglycemic condition, nor did she state how appellees knew that she was incapable of driving. . . ." *Id.* at 476, 609 A.2d at 850.

This question was first addressed by the Pennsylvania Supreme Court in *Witthoeft v. Kiskaddon,* 557 Pa. 340, 733 A.2d 623 (1999), when the issue of "whether a physician may be held liable for injuries suffered by a third party in an automobile accident caused by the physician's patient" presented itself. *Witthoeft,* at 342, 733 A.2d at 624. The court held that an ophthalmologist was not liable to a third party where the ophthalmologist failed to inform his patient of the patient's poor visual acuity and the patient subsequently injured a third party while driving. They stated, "it is an unreasonable extension of the concepts of duty and foreseeability to broaden a physician's duty to a patient and hold a physician liable to the public at large . . . ." *Witthoeft* at 353, 733 A.2d at 630.

The Supreme Court distinguished their holding in *Witthoeft* from that in *DiMarco.* Although liability was attributed to a physician in *DiMarco,* the facts were significantly different from *Witthoeft.* As in *DiMarco,* the patient had a communicable, sexually transmitted disease, and was given erroneous information which led to the infection of her partner. In *DiMarco,* the Supreme Court said it was reasonably foreseeable that a patient exposed to an infectious and communicable disease will injure a third party unless properly informed to prevent the spread of the disease, and one purpose for the treatment of the patient was specifically to help protect third parties from becoming infected due to the patient's conduct. *DiMarco* at 563, 583 A.2d at 424-25. Further, the third party injured in *DiMarco* was a member of a readily identifiable group of individuals, rather than the

public at large in *Witthoeft*. The Supreme Court in *Witthoeft* refused to extend liability in such circumstances.

The most recent case from an appellate court, and the case with facts most similar to the facts in the case before us, is *Hospodar v. Schick*. In *Hospodar*, the estate of a motorist killed in an automobile accident brought an action against the physician who treated the driver of the other car prior to the accident. The Superior Court found no third-party liability existed against the physician, despite the fact that known to the treating physician was a history of a seizure disorder and blackouts while driving, and he did not provide treatment for the seizures and the doctor did nothing to restrict his driving. The Superior Court stated that it was bound by the decision by the Pennsylvania Supreme Court in *Witthoeft,* and third-party liability did not exist against the physician.

Defendants argue that although plaintiffs attempt to set forth a cause of action against them based upon treatment of Crystal Ickes, no such liability extends to physicians under circumstances such as we have here, where a physician's patient causes injuries to a third party through an automobile accident, as elucidated by our appellate courts in the cases described above. *Crosby v. Sultz,* 405 Pa. Super. 527, 592 A.2d 1337 (1991); *Waddell v. York Hospital,* 415 Pa. Super. 469, 609 A.2d 847 (1992); *Witthoeft v. Kiskaddon,* 557 Pa. 340, 733 A.2d 623 (1999); *Hospodar v. Schick,* 885 A.2d 986 (Pa. Super. 2005).

Although the Pennsylvania Supreme Court did find a duty on the part of the physician in *DiMarco,* they have distinguished their holding in that case from the subsequent cases, and clearly explained in *Witthoeft*. (See

*supra* p. 126.) Similarly, *DiMarco* is also quite easily distinguished from the case presently before us, as this case does not involve a communicable disease or a readily identifiable group of third parties, but rather is more analogous to *Crosby; Waddell; Witthoeft;* and *Hospodar,* all of which involved a patient causing an automobile accident with a third party, and the Pennsylvania Superior and Supreme Courts refusing to extend liability to the physician in such circumstances.

Plaintiffs argue this case is distinguishable from *Crosby; Waddel; Witthoeft;* and *Hospodar* due to defendants' alleged notice of the seizures and the foreseeability that a third party would be harmed by the patient's condition. However, the foreseeability in this case is no greater than that in *Hospodar,* because in that case the physician was aware of a history of a seizure disorder and blackouts while driving, *Hospodar,* 885 A.2d at 987, yet still no cause of action existed against the physician.

Plaintiffs further argue that the physician here actually caused and/or contributed to the condition of Ms. Ickes by his treatment of her condition with certain prescribed medications which resulted in the subject motor vehicle accident. However, the *Hospodar* court addressed this issue by explaining the *DiMarco* court did find liability due to the physician's negligence because of the specific condition of a communicable disease, but where the condition is not communicable, the same conclusion cannot necessarily be reached. *Hospodar,* 885 A.2d at 990, citing *Witthoeft* at 350, 733 A.2d at 628. The *Hospodar* court also compared their case to *Witthoeft* in that the patient him or herself was aware of their medical condition, seizure disorder and poor vision, respectively,

and it was the patient who was in the best position to know the effects that condition had on driving abilities. *Hospodar,* 885 A.2d at 990.

Here, too, although the physician's actions or inactions may have contributed to the patient's condition and failed to prevent the patient from driving, the holdings in *Witthoeft* and *Hospodar* both conclude that no third-party liability exists under such circumstances.

Even accepting all allegations in the complaint as true, it is clear from the case law that no cause of action exists under these circumstances and no recovery is possible on behalf of plaintiff. The consistent line of opinions by our Superior and Supreme Courts have made clear that a liability does not extend to a physician for injuries suffered by a third party in an automobile accident caused by the physician's patient. As no cause of action exists against defendants, plaintiffs' complaint is dismissed.

As defendants' demurrer is granted, we will not address their objection to the claim for punitive damages, as it is now moot.

In light of the foregoing we enter this order:

## ORDER

And now, May 5, 2006, it is hereby ordered, directed and decreed that the defendants' preliminary objections in the nature of a demurrer to plaintiffs' second amended complaint are granted in conformity with the above and plaintiffs' second amended complaint is dismissed for failure to state a claim upon which relief can be granted.